# UNITED STATES COURT OF APPEALS
## Tenth Circuit
## Byron White United States Courthouse
## 1823 Stout Street
## Denver, Colorado 80294
## (303) 844-3157

Patrick J.  Fisher, Jr.                                              Elisabeth A. Shumaker
      Clerk                                                            Chief Deputy Clerk

June 15, 1999

**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  96-3018, *Smith v. Midland Brake, Inc.*
      Filed on June 14, 1999

    The slip opinion filed on June 14, 1999, contains a clerical error.  The plaintiff-appellant should have been listed as follows:

        GENEVA M. SMITH, as the administrator of the estate
        of Robert W. Smith, deceased.

A copy of the corrected slip opinion cover page is attached.

                          Sincerely,
                          Patrick Fisher, Clerk of Court


                          By:
                              Keith Nelson
                              Deputy Clerk




encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 14 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GENEVA M. SMITH, as the
administrator of the estate of Robert W.
Smith, deceased,

      Plaintiff-Appellant,

v.

MIDLAND BRAKE, INC., a division of
Echlin, Inc.,

      Defendant-Appellee.

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; JACK
DAVOLL, DEBORAH CLAIR, PAUL
ESCOBEDO; EQUAL EMPLOYMENT
ADVISORY COUNCIL; and CITY AND
COUNTY OF DENVER,

      Amici Curiae.

No. 96-3018

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 94-4165-DES)**

---

**OPINION ON REHEARING EN BANC**

---

Les E. Diehl of Goodell, Stratton, Edmonds & Palmer, L.L.P., Topeka, Kansas,
for Plaintiff-Appellant.

Daniel M. Shea (James Allan Smith and Robert K. Haderlein, of Smith, Currie & Hancock, L.L.P., Atlanta, Georgia, and Mary Kathleen Babcock of Foulston & Siefken Law Offices, Wichita, Kansas, with him on the briefs) for Defendant-Appellee.

C. Gregory Stewart, Philip B. Sklover, Lorraine C. Davis, and Robert J. Gregory of the Equal Employment Opportunity Commission, Washington D.C, filed an amicus curiae brief for the Equal Employment Opportunity Commission in support of Plaintiff-Appellant. David C. Feola of King, Minning, Clexton & Feola, L.L.C., Denver, Colorado, and Marille E. Langhoff of the Law Office of Marilee Langhoff, Littleton, Colorado, filed an amicus curiae brief for Jack Davoll, Deborah Clair, and Paul Escobedo in support of Plaintiff-Appellant.

Ann Elizabeth Reesman, Ellen Duffy McKay and Douglas S. McDowell of McGuiness & Williams, Washington, D.C., and Daniel E. Muse, Denver City Attorney, J. Wallace Wortham, Jr., Denver Assistant City Attorney Supervisor, Sybil R. Kisken, Denver Assistant City Attorney, City and County of Denver, Colorado, filed an amicus curiae brief for the Equal Employment Advisory Council and the City and County of Denver in support of Defendant-Appellee.

---

Before **SEYMOUR,** Chief Judge, **PORFILIO, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, LUCERO,** and **MURPHY,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

In this en banc appeal, we are required to answer two questions concerning the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 .[1] First,

---

[1] The original panel in this case voted to affirm the district court's entry of summary judgment for Midland Brake on Smith's ADA claim, Age Discrimination in Employment Act claim, and Kansas state law claim of

(continued...)

whether an employee can be a "qualified individual with a disability" when that employee is unable to perform the essential functions of his or her present job, regardless of the level of accommodation offered, but could perform the essential functions of other available jobs within the company with or without a reasonable accommodation. The answer to that question, we find, is yes. Second, if a person is a "qualified individual with a disability" and a reasonable accommodation is not available to enable that employee to perform the essential functions of his or her existing job, what is the scope of the employer's obligation to offer that employee a reassignment job?

We review the district court's grant of summary judgment de novo. See 19 Solid Waste Dept. Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998); White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining

---

[1](...continued)
retaliatory discharge. See Smith v. Midland Brake, Inc., 138 F.3d 1304, 1313 (10th Cir. 1998). We granted Smith's petition for rehearing en banc limited to the issue of the interpretation of the ADA. We did not grant rehearing as to the other portions of the panel decision, including its discussion of judicial estoppel, and consequently, the remainder of the panel opinion remains in effect.

whether the evidence presents a genuine issue of material fact, we view it in the light most favorable to the party against whom summary judgment was entered," here Plaintiff-Appellant Robert Smith.    Garratt v. Walker  , 164 F.3d 1249, 1251 (10th Cir. 1998) (en banc).


**Background**

The facts of this case are reported in the original panel opinion,    see Smith v. Midland Brake, Inc.  , 138 F.3d 1304 (10th Cir. 1998), and we briefly restate them here. [2]  Plaintiff-Appellant Robert Smith was employed by Defendant-Appellee Midland Brake for nearly seven years in the light assembly department to assemble and test small air valve components of air brakes for large vehicles. Through this job, Smith came into contact with various chemicals, solvents, and irritants, and eventually developed muscular injuries and chronic dermatitis on his hands,  see id.  at 1307.  Smith's maladies were so severe that his physicians restricted his work activities by recommending that he avoid exposure to potential contact irritants and, on several occasions, by ordering him not to work at all for limited periods.    See id.  Smith has admitted that his physicians

---

[2]  Robert W. Smith died while this appeal was pending before the original panel.  Geneva M. Smith, as the Administrator of the Estate of Robert W. Smith, filed a suggestion of death and a motion to substitute herself as the Plaintiff-Appellant, pursuant to Fed. R. App. P. 43(a).  We grant that motion.

considered him "permanently disabled" and unfit to work in the light assembly department due to his chronic dermatitis, id. at 1308, and that Midland Brake was unable to find an assignment within the light assembly department that Smith could perform given his physical limitations, see id. at 1307. Eventually, Midland Brake fired Smith because of its admitted inability to accommodate his chronic skin sensitivity in his previous department. See id.

Smith filed a complaint in the United States District Court for the District of Kansas seeking relief on the basis of Midland Brake's alleged violations of the ADA, ADEA, and Kansas state law. The district court entered summary judgment for Midland Brake on all of these claims. With regard to the ADA claim in particular, the district court held that Smith was not a "qualified individual with a disability" because, inter alia, Smith failed to provide Midland Brake with a medical release to return to work. On appeal, the panel affirmed the district court's judgment, but as to the ADA claim the panel affirmed on different reasoning. Although the panel agreed that Smith was not a "qualified individual with a disability," it predicated that conclusion upon the fact that no amount of accommodation could allow Smith to perform his existing job. Therefore, the panel concluded that Smith was not "qualified" under 42 U.S.C. § 12111(8). Judge Briscoe dissented on that particular holding. This court subsequently

agreed to rehear only Smith's ADA claim "on the issue of interpretation of the requirements of the Americans with Disabilities Act."

## Discussion

### I. ADA Statutory Framework

### <u>A</u>.

The general proscription of Title I of the American with Disabilities Act (ADA) is:

> No covered entity shall discriminate against a <u>qualified individual with a disability</u> because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). The ADA defines the term "discriminate" to include

> not making <u>reasonable accommodations</u> to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .

42 U.S.C. § 12112(b)(5)(A) (emphasis added).

This language reveals that a person must meet the threshold test of being a "qualified individual with a disability" in order to invoke the ADA. The ADA defines a "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual     holds or desires  .

42 U.S.C. § 12111(8) (emphasis added). Midland Brake claims that Smith does not meet that definition of "qualified individual with a disability" because he could not perform the essential functions of his existing job in the light assembly department regardless of the level of accommodation offered.     See Smith , 138 F.3d at 1307.

In this argument, Midland is in error, and the error is easy to identify. That reading ignores the last two words of the statutory definition of "qualified individual with a disability," the last two words being "or desires." 42 U.S.C. § 12111(8). Although a "qualified individual with a disability" has to be someone who can perform the essential functions of a job, that inquiry is not limited to the employee's existing job. Rather, the plain language of the statute includes an employee who has the ability to do other jobs within the company that such disabled employee "desires." 42 U.S.C. § 12111(8). To read the ADA otherwise, would render the word "desires" meaningless, and we must avoid such a construction.   See Gustafson v. Alloyd Co.   , 513 U.S. 561, 574 (1995)

(interpreting § 12(2) of the Securities Act of 1933, "the Court will avoid a reading which renders some words altogether redundant"); Fuller v. Norton , 86 F.3d 1016, 1024 (10th Cir. 1996) ("We avoid interpreting statutes in a manner that makes any part superfluous.").

Our conclusion that a "qualified individual with a disability" includes a disabled employee who desires and can perform with or without reasonable accommodation an available reassignment job within the company, though unable to perform his or her existing job, is reinforced by an examination of the ADA's definition of "reasonable accommodation." The ADA definition of "reasonable accommodation" lists the kinds of reasonable accommodations that may be required of an employer. Reasonable accommodations may include

> **(A)** making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> **(B)** job restructuring, part-time or modified work schedules, reassignment to a vacant position , acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added). The term "reassignment to a vacant position" indisputably indicates more than just an alteration to the employee's existing job. Reading §§ 12111(8) and (9) of the ADA together, a reasonable accommodation may include a reassignment from the employee's current job to one that he or she desires.

- 8 -

Legislative history further supports this reading of the ADA. The House Committee on Education and Labor that reported out the bill that became the ADA stated:

> Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker.

H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345. Neither Midland Brake nor amicus have cited, nor have we found, any contrary legislative history.

Our reading of "qualified individual with a disability" to include individuals who can perform an appropriate reassignment job within the company, with or without reasonable accommodation, even though they cannot perform their existing job no matter how much accommodation is extended, is supported by nearly every circuit that has explicitly or implicitly considered the issue. See Feliciano v. Rhode Island, 160 F.3d 780, 785-86 (1st Cir. 1998) ("[The employee] produced no evidence to show that she could perform the essential functions of [her] position with or without reasonable accommodation. . . . The determination that [the employee] cannot perform the essential functions of her job . . . does not end the analysis. . . . Section 12111(9)(B) of the ADA states that 'reasonable accommodation' may include 'reassignment to a vacant

position.'") (citations omitted); Stone v. City of Mount Vernon, 118 F.3d 92, 100 (2d Cir. 1997) (refusing to hold unreasonable as a matter of law a requested reassignment of a partially paralyzed firefighter to the fire department's administrative bureau), cert. denied, 118 S. Ct. 1044 (1998); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 578, 580 (3d Cir. 1998) (employee who "cannot perform his former duties" must, if the required accommodation is a transfer to another department or supervisor, "demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation") (quotations omitted); Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1187 (6th Cir. 1996) ("it is true that employers may be required, as a reasonable accommodation, to transfer a disabled employee to a vacant position for which he or she is qualified"); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 677 (7th Cir. 1998) ("It is well established that under the ADA, the employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which she is qualified. The option of reassignment is particularly important when the employee is unable to perform the essential functions of his or her current job, either with or without accommodation or when accommodation would pose an undue hardship for the employer."); Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996) (" Our review of the ADA, its regulations, and

the EEOC's interpretive guidance leads us to the conclusion of the majority of courts that have addressed the issue that the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position."); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112, 1114 (8th Cir. 1995) (employee's previous job as a mechanic would be totally inappropriate given his condition, but if the employer "had a vacant, existing position for which [the employee] qualified, [the employee's] assignment to the position might have been a reasonable accommodation"); Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1046-47 (9th Cir. 1999) ("In the employment context, '[o]nce the plaintiff has established the existence of a reasonable accommodation that would enable him or her to perform the essential functions of an available job, the burden switches to the defendant to show that this accommodation would constitute an undue hardship.'") (quoting Barnett v. U.S. Air, Inc., 157 F.3d 744, 749 (9th Cir. 1998)); Barnett, 157 F.3d at 749-50 ("the plaintiff must show the existence of a position that he or she could perform either with or without specific reasonable accommodation," but holding that employee had not established right to reassignment to a mailroom position because others with greater seniority rights had claim to that job); Aldrich v. Boeing Co., 146 F.3d 1265, 1271 (10th Cir. 1998) (finding evidentiary support for employee's

- 11 -

argument that there existed two other positions to which he could have been reassigned as a reasonable accommodation), cert. denied, --- S. Ct. ---, No. 98-859, 1999 WL 342477 (U.S. June 1, 1999); White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir. 1995) (after finding no "possible accommodations" enabling employee to continue working in his present position, rejected various reassignment accommodations because employee was either not qualified for vacant jobs, no vacancies existed, or reassignment would have been a promotion); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1301 (D.C. Cir. 1998) (en banc) ("An employee seeking reassignment to a vacant position is thus within the definition [of an 'otherwise qualified individual with a disability'] if, with or without reasonable accommodation, she can perform the essential functions of the employment position to which she seeks reassignment."). But see Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995) ("the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position"). [3]

_____

[3] We are unsure of the Fifth Circuit's position on this issue. In Foreman v. Babcock & Wilcox Co., 117 F.3d 800 (5th Cir. 1997), cert. denied, 118 S. Ct. 1050 (1998), after holding that the employee's heart condition was not a disability, id. at 806-807, the court alternatively held that the employee was an unqualified individual because he was medically unqualified to perform his current job, id. at 807-09. The court then held, once again in the alterative, that,

(continued...)

- 12 -

Midland Brake argues that the term "reassignment" in the definition of

"reasonable accommodation" in § 12111(9) and the words "or desires" in

§ 12111(8) must refer only to job applicants and not to existing employees.  In

this way Midland Brake tries to give meaning to the words "or desires" to avoid

superfluity.  We reject that reading.  In the first place, it is not textually sound

because § 12111(9) uses the phrase " <u>re</u>assignment."  If that phrase were

---

[3](...continued)
even if the employee were disabled and qualified, his requested accommodation
for a reassignment was unreasonable because it would violate a priority right of
others under a collective bargaining agreement and because the employee offered
no evidence that the requested positions were available.  <u>Id.</u> at 809-10.

    A year later, the Fifth Circuit decided <u>Deas v. River West, L.P.</u>, 152 F.3d
471 (5th Cir. 1998).  In <u>Deas,</u> the Fifth Circuit held that the employee was not
disabled under the "regarded as" prong of the ADA's definition of disability.  <u>Id.</u>
at 481.  However, the court went on to say that if the employee were asserting
discrimination for failure to reassign her to another position, she would not
prevail "because she has not made any showing either that positions were
available or that she applied for, requested to be considered for, or even showed
an interest in other positions at the hospital. [The employee] bears the initial
burden of producing evidence on these issues."  <u>Id.</u> at 481 n.23; <u>Still v. Freeport-
McMoran, Inc.,</u> 120 F.3d 50, 53 (5th Cir. 1997) (holding that employee was not
disabled, but even if he were, he did not have a right to reassignment  to a new job
because he acknowledged that he was not able to meet the basic requirements of
the new job, even with reasonable accommodations).

    District court cases in the Fifth Circuit that have applied <u>Foreman</u> have not
barred reassignment simply because an employee is unable to perform the
essential functions of his or her existing job, no matter the accommodation.
Rather, when they have denied reassignment , it has been because factually the
employee could not establish that there was an available alternative job which the
employee was competent to perform.  <u>See, e.g.,</u> <u>Leger v. Texas EMS Corp.</u>, 18 F.
Supp. 2d 690, 695 (S.D. Tex. 1998); <u>Newman v. Chevron U.S.A.</u>, 979 F. Supp.
1085, 1091 (S.D. Tex. 1997); <u>Wilson v. Phillips Petroleum Co.</u>, No.
2:97-CV-439-J, 1998 WL 874835, at *3 (N.D. Tex. Dec. 8, 1998).

addressed only to job applicants, the term would be "assignment." The "re" in "reassignment" implies the presence of an existing assignment, i.e., an existing job, that the person holds, such that the person must therefore be an existing employee, not a job applicant.

In addition, reassignment is listed as one of the available reasonable accommodations in the middle of a laundry-list of reasonable accommodations which clearly apply to existing employees, e.g., job restructuring, modification of job schedules, etc. See 42 U.S.C. § 12111(9)(B). "That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well." Beecham v. United States, 511 U.S. 368, 371 (1994). As a result, we give the reasonable accommodation of reassignment the same character as the other reasonable accommodations listed in the same paragraph, which means that reassignment is applicable to existing employees.

Finally, § 12112(a) prohibits discrimination not only in regard to job application procedures and hiring decisions, but also to advancement, termination of employees, compensation, job training, "and other terms, conditions, and privileges of employment." With this background in mind, it is the more natural reading of "or desires" to apply the phrase more broadly than just to job applicants. See Daugherty v. City of El Paso, 56 F.3d 695, 699 (5th Cir. 1995) ("[W]e do not read the statutory reference to employment an individual 'desires'

as applicable only to job applicants.  Instead we read this language as extending to individuals like [the plaintiff] who are already employed and then become disabled, since the broad prohibition against discrimination found in 42 U.S.C. § 12112(a) extends not only to hiring and job application procedures, but to advancement, discharge of employees,      'and other terms, conditions, and privileges of employment.'").

## B.

The separate concurrence and dissent of Judge Kelly suggests that the reassignment duty imposed by the ADA is no more than a duty merely to consider without discrimination a disabled employee's request for reassignment along with all other applications the employer may receive from other employees or job applicants for a vacant position.  We reject this narrow definition of reassignment, both because it does violence to the literal meaning of the word reassignment and because it would render the reassignment language in 42 U.S.C. § 12111(9) a nullity.

First, as to the literal language, the ADA defines the term "reasonable accommodation" to include "reassignment to a vacant position."  The statute does not say "consideration of a reassignment to a vacant position."  Moreover,

"reassignment" must mean something more than the mere opportunity to apply for a job with the rest of the world.  As the D.C. Circuit has explained:

> [T]he word "reassign" must mean more than allowing an employee to apply for a job on the same basis as anyone else.  An employee who on his own initiative applies for and obtains a job elsewhere in the enterprise would not be described as having been "reassigned";  the core word "assign" implies some active effort on the part of the employer.

Aka, 156 F.3d at 1304.

With regard to the second point, the ADA separately prohibits an employer from discrimination against a disabled person in his or her application for a vacant job.  See 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability      . . . in regard to job application procedures, the hiring . . . .").  Whether the disabled person is an existing employee seeking reassignment  or an outside job applicant, the company cannot therefore discriminate against the disabled individual on the basis of his or her disability.  Thus, if the reassignment language merely requires employers to consider on an equal basis with all other applicants an otherwise qualified existing employee with a disability for reassignment to a vacant position, that language would add nothing to the obligation not to discriminate, and would thereby be redundant.  See Aka, 156 F.3d at 1304 ("[T]he ADA's reference to reassignment would be redundant if permission to apply were all it meant; the ADA already prohibits discrimination 'against a qualified individual with a

- 16 -

disability because of the disability of such individual in regard to job application procedures.'") (citing 42 U.S.C. § 12112(a)). Statutory redundance is to be avoided, and we are to give meaning to every word of a statute where possible. See Ratzlaf v. United States, 510 U.S. 135, 140 (1994).

Thus, the reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position. Reassignment is, in fact, one of the forms of reasonable accommodation specifically mentioned by the statute to be utilized if necessary and reasonable to keep an existing disabled employee employed by the company. The language chosen by the other courts in addressing the reasonable accommodation of reassignment is instructive. See Monette, 90 F.3d at 1187 ("it is true that employers may be required, as a reasonable accommodation, to transfer a disabled employee to a vacant position for which he or she is qualified"); Gile, 95 F.3d at 498 ("[A]n employer may be obligated to reassign a disabled employee only when, even with reasonable accommodation, the employee can no longer perform the essential functions of his present job."); Ransom v. State of Ariz. Bd. of Regents, 983 F. Supp. 895, 902-03 (D. Ariz. 1997) ("[A]llowing the plaintiff to compete for jobs open to the public is no accommodation at all. . . . [The employer's] policy or practice that all reassignments are made through competitive hiring prevents the reassignment of

employees with disabilities to vacant positions for which they are qualified and

discriminates against 'qualified individuals with disabilities.'") (quotations and

citations omitted) ; Community Hosp. v. Fail , 969 P.2d 667, 678 (Colo. 1998)

("[T]he ADA requires an employer to offer reassignment to a vacant position that

the employee can perform if the employer cannot reasonably accommodate her

disability in her current position.").    [4]

---

[4]  Moreover, elsewhere in the ADA, Congress provided that:

> Except as otherwise provided in this chapter, nothing in this chapter
> shall be construed to apply a lesser standard than the standards
> applied under title V of the Rehabilitation Act of 1973 (29 U.S.C.
> § 790 et seq.) or the regulations issued by the Federal agencies
> pursuant to such title.

42 U.S.C. § 12201(a).  The Supreme Court stated that this directive "requires us
construe the ADA to grant at least as much protection as provided by the
regulations implementing the Rehabilitation Act."       Bragdon v. Abbott , 118 S. Ct.
2196, 2202 (1998).  The regulations issued by the Justice Department
implementing § 504 of the Rehabilitation Act (which is the section of the
Rehabilitation Act that is directly analogous to the ADA) state:

> A recipient  shall make reasonable accommodation to the known physical or
> mental limitations of an otherwise qualified handicapped applicant or
> employee unless the recipient can demonstrate that the accommodation
> would impose an undue hardship on the operation of its program.

28 C.F.R. § 41.53 (1998) (emphasis added).  Reading the ADA with this
regulatory gloss in mind, as we must, establishes that when an otherwise        qualified
individual with a disability    can only be reasonably accommodated by a
reassignment  to a vacant position, the employer "shall" make that        reassignment .
If the ADA merely requires the employer to give the disabled employee
"consideration" for that vacancy on an equal basis with other applicants, the ADA

(continued...)

- 18 -

The EEOC Interpretive Guidance, 29 C.F.R. Pt. 1630, App. § 1630.2(o) (1998), is not to the contrary. [5] It provides:

> Reassignment to a vacant position is also listed as a potential reasonable accommodation. In general, reassignment should be considered only when accommodations within the individual's current position would pose an undue hardship. . . . An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the

---

[4](...continued)
would supply disabled employees with lesser protection than that provided by the regulations implementing the Rehabilitation Act, a result contrary to Bragdon.

[5] Pursuant to a statutory directive, see 42 U.S.C. § 12116, the EEOC issued regulations to implement title I of the ADA, see 29 C.F.R. §§ 1630.1-.16. Those regulations are entitled to a great deal of deference. See EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 115 (1988); Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984); Deane v. Pocono Medical Center, 142 F.3d 138, 143 n.4 (3d Cir. 1998) (en banc).
The EEOC added to these regulations an appendix, which is the Commission's interpretive guidance to the ADA. The EEOC also published its Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act. As administrative interpretations of the ADA, which is the statute the EEOC is charged with enforcing, these guidances are "not controlling upon the courts by reason of their authority," but they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986) (quotations and citations omitted); Pack v. Kmart Corp., 166 F.3d 1300, 1305 n.5 (10th Cir. 1999) ("While the EEOC's guidance may be entitled to some consideration in our analysis, it does not carry the force of law and is not entitled to any special deference."), petition for cert. filed (U.S. May 5, 1999) (No. 98-1784). On the other hand, if the EEOC interpretive guidances are construing not the underlying statute, but rather are interpreting the EEOC's own regulations issued pursuant to the statute, then that interpretation would be entitled to greater deference. See Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994) (courts "must give substantial deference to an agency's interpretation of its own regulations . . . . [T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulations") (quotation and alteration omitted).

employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodations.

The context of the quoted language reveals that the word "considered" is not intended to denigrate a disabled employee's right to have reassignment offered as a reasonable accommodation where appropriate. The quoted sentence, rather, only states a condition precedent before reassignment should be considered. That is, the message delivered by the quoted sentence is first, the employer must determine that no reasonable accommodation could be made to keep the disabled employee in his present position. Only then should the employer move to the alternative accommodation of reassignment.

The interpretative guidance uses the word "considered" because reassignment necessarily includes as one of its components the interactive process discussed below. That is, a process of consideration is necessarily a component of the act of reassignment itself. Only through consideration in a reasonably interactive way can it be determined whether an employee desires reassignment; whether there are vacant positions available at an equivalent or lesser position; whether such positions are truly vacant; whether reassignment would interfere with the rights of other employees or important business policies of the company, etc. The right to reassignment after all is not absolute. It requires deliberative consideration, and depending upon many factors, may or

may not rise to a right to reassign. On the other hand, after considering all of the relevant factors, it may very well be determined that reassignment is a reasonable accommodation under all of the circumstances. If it is so determined, then the disabled employee has a right in fact to the reassignment, and not just to the consideration process leading up to the potential reassignment.

Our reading of the EEOC Interpretive Guidance is confirmed by the most recent pronouncement of the EEOC. The EEOC asked the question: "Does **reassignment** mean that the employee **is permitted to compete** for a vacant position?" EEOC Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act ("EEOC Guidance"), at 44 (1999) (emphasis in original). It answered that question, "No. Reassignment means that the employee gets the vacant position if s/he is qualified for it. Otherwise, reassignment would be of little value and would not be implemented as Congress intended." Id.

Any other reading of "considered" in the EEOC Interpretive Guidance is not only contextually indefensible, it is illogical. In addition to reassignment to a vacant position, the ADA lists other reasonable accommodations such as "job restructuring," "part-time or modified work schedules," and "the provision of qualified readers or interpreters." 42 U.S.C. § 12111(9)(B). There is nothing about a reassignment that transforms it into a lesser accommodation than the

others listed, which an employer must not only consider but must also implement if appropriate.

If a disabled employee had only a right to require the employer to consider his application for reassignment but had no right to reassignment itself, even if the consideration revealed that the reassignment would be reasonable, then this promise within the ADA would be empty. The employer could merely go through the meaningless process of consideration of a disabled employee's application for reassignment and refuse it in every instance. It would be cold comfort for a disabled employee to know that his or her application was "considered" but that he or she was nevertheless still out of a job – a job to which he or she was otherwise qualified and as to which he or she had a reasonable claim to reassignment. We do not think Congress intended such a hollow promise when it listed reassignment as one of the specific reasonable accommodations in 42 U.S.C. § 12111(9).

We conclude that reassignment of an employee to a vacant position in a company is one of the range of reasonable accommodations which must be considered and, if appropriate, offered if the employee is unable to perform his or her existing job. Thus, even though Smith was admittedly unable to perform the essential functions of his existing job in the light assembly department, that

admission by itself does not preclude his ADA claim for an accommodation of reassignment.

The separate concurrence and dissent by Judge Kelly erroneously conflates "affirmative action" with the statutory definition of discrimination. However, judicial labels cannot substitute for Congress' statutory mandate in the ADA. In § 12112(b)(5)(A), Congress <u>defined</u> the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ." Then, in § 12111(9)(B), Congress defined the term "reasonable accommodation" to include "reassignment to a vacant position." Thus, although the dissent would prefer to view the reasonable accommodation of reassignment as "affirmative action," Congress chose to consider it otherwise when it defined the failure reasonably to accommodate (including reassignment) as a prohibited act of discrimination. It is the Congressional definition, of course, that must govern our analysis.

On the other hand, the dissent would judicially do some redrafting of the ADA. The only statutory exception here relevant to an employer's obligation to make reasonable accommodations to an otherwise qualified individual with a disability is if such accommodations would impose "an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). The dissent would write in an additional exception to the effect that an employer need not make the reasonable

- 23 -

accommodation of reassignment if it can find a better qualified employee to take the place of the otherwise qualified individual with a disability.[6]  In so doing, the dissent would further judicially amend the statutory phrase "qualified individual with a disability" to read, instead, "best qualified individual, notwithstanding the disability."  However, these are not the words as Congress wrote them, and our duty is to enforce Congress' definition of discrimination.[7]

It is also telling that the dissent chooses to ignore one of the "Findings and Purposes" of the ADA, where Congress found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, <u>full participation, independent living, and economic self-sufficiency</u> for such

---

[6] One wonders whether the dissent would similarly allow an employer to escape its duty to offer the other enumerated reasonable accommodations to keep a disabled employee in his or her existing job by the same expedient of finding a more qualified person to fulfill that job.  For example, if an otherwise qualified disabled person asks for a reasonable "modified work schedule" or "modification of equipment" to keep his or her existing job, could the employer find a more qualified employee to fill the job, and then assert that it was thereby absolved of its obligation to offer a reasonable accommodation to the disabled employee?  To ask the question is to answer it, yet it points out how the dissent seeks to single out one listed reasonable accommodation – reassignment to a vacant position – and denigrate it to second-class status.

[7]The dissent argues that our interpretation of the ADA would read out the words "may include" that precede the nonexclusive list of examples of reasonable accommodations found in 42 U.S.C. § 12111(9).  Our interpretation does nothing of the sort.  The words "may include" precede the nonexclusive list of examples of reasonable accommodation precisely because the list is nonexclusive and various accommodations may or may not be appropriate depending upon the disability and other circumstances of employment.

individuals." 42 U.S.C. § 12101(a)(8) (emphasis added). Thus, the ADA has multiple objectives, and by defining discrimination as it did to include the failure to offer reasonable accommodations, one of Congress' objectives was to facilitate economic independence for otherwise qualified disabled individuals. See Cleveland v. Policy Management Systems Corp., --- S. Ct. ---, No. 97-1008, 1999 WL 320795, at *5 (U.S. May 24, 1999) ("The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity.").

The dissent's reading of the legislative history is similarly imprecise. The legislative history that it cites, H.R. Rep. No. 101-485 (II), at 55-56 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337-338, refers only to an employer's obligations in hiring initial job applicants. It does not refer to an employer's statutory obligation to offer reasonable accommodations to an existing employee who is a "qualified individual with a disability." We have no quarrel with the proposition that an employer, when confronted with two initial job applicants for a typing position, one of whom types 50 words a minute while the other types 75 words a minute, may hire the person with the higher typing speed, notwithstanding the fact that the slower typist has a disability. However, the legislative history clearly distinguishes between the affirmative action of

modifying the essential functions of a job (which is not required) and the duty to reassign a disabled person to an existing vacant job, if necessary to enable the disabled person to keep his or her employment with the company (which is required).[8] When the legislative history focuses on Congress' understanding of the scope of the "reassignment" option as a reasonable accommodation, it is clear that Congress understood that option to give the disabled employee real rights vis-a-vis other applicants. The House Report states:

> The Committee also wishes to make clear that the reassignment need only be to a vacant position - "bumping" another employee out of a position to create a vacancy is not required.

H.R. Rep. No. 101-485 (II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345. As the en banc District of Columbia Circuit observed in Aka, 156 F.3d at 1304, "Had Congress intended that disabled employees be treated exactly like other job applicants, there would have been no need for the report to go on to explain that '"bumping" another employee out of a position to create a vacancy is

---

[8] Compare H.R. Rep. No. 101-485 (II), at 65 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 346 ("The Committee wishes to emphasize again that this legislation does not require an employer to make any modification, adjustment, or change in a job description or policy that an employer can demonstrate would fundamentally alter the essential functions of the job in question.") with H.R. Rep. No. 101-485 (II), at 62 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 344 ("The duty [under the ADA] to make reasonable accommodations . . . has been included as a form of non-discrimination on the basis of disability for almost fifteen years under section 501 and section 504 of the Rehabilitation Act of 1973.").

not required'. . .; there would have been no danger that an employee would have to be 'bumped.'"

The unvarnished obligation derived from the statute is this: an employer discriminates against a qualified individual with a disability if the employer fails to offer a reasonable accommodation. If no reasonable accommodation can keep the employee in his or her existing job, then the reasonable accommodation may require reassignment to a vacant position so long as the employee is qualified for the job and it does not impose an undue burden on the employer. Anything more, such as requiring the reassigned employee to be the best qualified employee for the vacant job, is judicial gloss unwarranted by the statutory language or its legislative history.

The dissent's citation of judicial authority is similarly wide of the mark. All that the dissent's cases hold is that the employer need not change the essential functions or prerequisites of a vacant job in order to accommodate a reassignment. That, of course, is an unremarkable proposition. See Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 679 (7th Cir. 1998) (an employer is not required to relinquish "legitimate job prerequisites" in order to place a disabled employee in a vacant position); Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 (11th Cir. 1997) (per curiam) (employer not required to modify its existing policy against "rolling back" salaried supervisory employees into

unionized production positions in order to create a production position for a disabled employee who had previously been a salaried supervisory employee. Further, plaintiff conceded he was not medically qualified for any position with the defendant.); Daugherty v. City of El Paso, 56 F.3d 695, 699-700 (5th Cir. 1995) (undue hardship to require employer to make fundamental alteration in policy, upon which other employees relied, of filling vacancies with full-time employees, rather than part-time employees like plaintiff, in order to accommodate disabled employee. Further, plaintiff did not satisfy the "minimum requirements" for taking the examination required for one of the jobs sought.); Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) ("[Employer] was not required to create a part-time position for plaintiff" when it had no part-time positions anywhere in the company.) (emphasis in original). The final case cited by the dissent, Wernick v. Federal Res. Bank of NY, 91 F.3d 379 (2d Cir. 1996), is particularly inapposite. In Wernick, the court simply held that when an employee rejects a proffered reasonable accommodation within her existing job, summary judgment for the employer in a failure to reassign case is appropriate. See id. at 384 ("[T]he district court's grant of summary judgment must be affirmed because the accommodations offered by the [employer] were sufficient to discharge its obligation under the disability acts to make reasonable accommodation."). There, the employee had sought a modification in one of the

"essential functions of [her] job" in that she requested that she be supervised by a different supervisor.  Id.  The court held that the ADA did not require such a modification.

Not a single case cited by the dissent holds that an employer may abrogate its ADA obligation to offer reassignment as a reasonable accommodation by the simple expedient of finding another job applicant that the employer regards as more qualified.  To the extent the dissent attempts to read language in any of these cases so broadly, we believe it would conflict with the employer's statutory duties under the ADA.

On the contrary, "[n]umerous courts have assumed that the reassignment obligation means something more than treating a disabled employee like any other job applicant. [citing Gile v. United Airlines, Inc., 95 F.3d 492, 496-99 (7th Cir. 1996); Mengine v. Runyon, 114 F.3d 415, 418 (3d Cir. 1997); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114-15 (8th Cir. 1995)]."  Aka v. Washington Hospital Center, 156 F.3d 1284, 1304 (D.C. Cir. 1998) (en banc).  To that list, cited by the District of Columbia Circuit, we would add Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1187 (6th Cir. 1996); Ransom v. State of Arizona Board of Regents, 983 F. Supp. 895, 902-03 (D. Ariz. 1997); and Community Hosp. v. Fail, 969 P.2d 667, 678 (Colo. 1998).

As the dissent rightly observes and as is explained in Section II of this opinion, Congress has already significantly cabined the obligation to offer reassignment to a qualified employee who is disabled so as to ensure that it is not unduly burdensome, or even particularly disruptive, of an employer's business. First, reassignment need be only to an existing vacant job. Therefore, employers need not create a new job or even modify an essential function of a vacant job in order to make it suitable for the disabled employee, because such a reconfigured job is not considered an existing vacant position. Similarly, if other employees within the company have a legitimate contractual or seniority right to a vacant position, it is not considered vacant for reassignment to the disabled employee. Second, the employee must be "qualified" for the vacant position. Although the statute does not require that the employee be the "best qualified" employee for the vacant position, it at least ensures the employer that it need not make the reassignment unless the employee is truly qualified to do the job. Third, the reassignment need not involve a promotion, and the employer has the authority to pick and choose which appropriate vacant job is to be offered to the otherwise qualified disabled employee. Fourth, no reassignment is required if it is not a "reasonable" accommodation or if it poses an "undue hardship." Congress felt that these were sufficient safeguards. If further limitations are to be sought, they must come from Congress.

Finally, if there is any ambiguity in what Congress intended to include within the ADA definition of discrimination, we should give some deference to the EEOC, which is charged in part with administering the ADA. As previously quoted in this opinion, in the EEOC Interpretative Guidance, the EEOC posed the question: "Does **reassignment** mean that the employee **is permitted to compete** for a vacant position?" The EEOC answered that question, "No. Reassignment means that the employee gets the vacant position if s/he is qualified for it. Otherwise reassignment would be of little value and would not be implemented as Congress intended." EEOC Guidance: Reasonable Accommodation and Undue Hardship Under the Amercians With Disabilities Act at 44 (1999). See Reno v. Koray, 515 U.S. 50, 61 (1995) ("some deference" owed to interpretative rules and internal agency guidelines adopted by an agency charged with administering a statute).

## II. Scope of the reassignment duty

We turn next to the second issue on this appeal, which is the scope of Midland Brake's obligation to offer Smith a reassignment position.

A.    Reasonable Accommodations Within the Existing Job are Preferred

When an employer selects among several possible reasonable accommodations, the preferred option is always an accommodation that keeps the employee in his or her existing job if that can reasonably be accomplished.    See H.R. Rep. No. 101-485(II), at 63 (1990),    reprinted in  1990 U.S.C.C.A.N. 303, 345 ("Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is considered.");    29 C.F.R. Pt. 1630, App. § 1630.2(o) ("In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]."); EEOC Guidance, at 39 ("Reassignment is the reasonable accommodation of last resort.").    "In other words, Congress saw reassignment, as the EEOC does, as an option to be considered only after other efforts at accommodation have failed."    Aka, 156 F.3d at 1301 (citing   Gile, 95 F.3d at 496-98).    See also  Cassidy v. Detroit Edison Co.   , 138 F.3d 629, 634 (6th Cir. 1998) ("Generally, transfer or reassignment of an employee is only considered when accommodation within the individual's current position would pose an undue hardship.").

Both Smith and Midland Brake agree that no reasonable efforts at accommodation would have enabled Smith to perform the essential functions of

his previous job in the light assembly department.      See Smith, 138 F.3d at 1308. Accordingly, reassignment must be considered, and, if appropriate, offered.

B.      The Accommodation of "[R]eassignment to a [V]acant [P]osition" is Limited by the Modifier of Reasonableness

Once it is appropriate to consider reassignment, the employer is required only to take reasonable steps to accomplish a reassignment.  The duty of reassignment is not an absolute one, but rather is in all particulars suffused with the limitation that the employer need only take such actions for reassignment as are reasonable under the circumstances.

We derive the important limiting factor of reasonableness on an employee's duty to reassign from the statute itself, which requires only reasonable accommodation.   See 42 U.S.C. §§ 12112(b)(5)(A), 12111(9). Everything that an employer must do in terms of a reassignment is modified by the adjective reasonable, just as that adjective modifies any other accommodation required by an employer under the ADA.

C.      Specific Limitations on an Employer's Duty to Reassign

The scope of Midland Brake's obligation to offer Smith a reassignment position is further constrained by some of the broadly accepted limitations on an employer's duty to reassign that have evolved under ADA case law in our circuit and others.

### 1.      Interactive process

"The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" Templeton v. Neodata Services, Inc., 162 F.3d 617, 619 (10th Cir. 1998) (quoting Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). 29 C.F.R. § 1630.2(o)(3) states:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting

limitations, [9] and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job.     See Taylor v. Principal Financial Group, Inc.   , 93 F.3d 155, 165 (5th Cir. 1996). The employee should provide enough information about his or her limitations and desires so as to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company. In expressing a desire for reassignment, an employee need not use magic words.     But, the employee must convey to the employer a desire to remain with the company despite his or her disability and limitations.   See Taylor v. Phoenixville Sch. Dist.   , --- F.3d ---, No. 98-1273, 1999 WL 184138, at *12 (3d Cir. April 5, 1999);     Hendricks-Robinson v. Excel Corp. , 154 F.3d 685, 694 (7th Cir. 1998) ("A request as straightforward as asking for continued employment is a sufficient request for accommodation."); EEOC

---

[9] See Beck, 75 F.3d at 1134 ("An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations--a duty dictated by common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate."); Hedberg v. Indiana Bell Telephone Co., 47 F.3d 928, 934 (7th Cir. 1995) ("The ADA does not require clairvoyance."); Miller v. National Cas. Co., 61 F.3d 627, 630 (8th Cir. 1995) ("'The ADA does not require clairvoyance.' [The employer] was not obligated to divine the presence of a disability from [the employee's] extended absence from work and the company's knowledge that she was in some sort of stressful family situation.") (quoting Hedberg, 47 F.3d at 934). See also, 29 C.F.R. Pt. 1630, App. § 1630.9 ("Employers are obligated to make reasonable accommodation only to the physical or mental limitations resulting from the disability of a qualified individual with a disability that is known to the employer. . . . In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.").

Guidance, at 8 ("To request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'").

Once the employer's responsibilities within the interactive process are triggered by appropriate notice by the employee, both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available. The obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee. The interactive process is typically an essential component of the process by which a reasonable accommodation can be determined. [10]

---

[10] As already quoted, in <u>Templeton</u>, we stated that the regulations envision an interactive process which "requires" participation by both parties. 162 F.3d at 1135; <u>see also</u> <u>Phoenixville</u>, 1999 WL 184138, at * 12-14 (addressing what notice must be given by an employee to an employer to trigger the employer's "obligations" under the interactive process); <u>Taylor</u>, 93 F.3d at 165 ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."); <u>Baert v. Euclid Beverage, Ltd.</u>, 149 F.3d 626, 633 (7th Cir. 1998) ("The ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation."); <u>Hendricks-Robinson</u>, 154 F.3d at 693 ("The 'reasonable accommodation' element of the [the ADA] imposes a duty upon employers to engage in a flexible, interactive process with the disabled employee

(continued...)

The interactive process includes good-faith communications between the employer and employee.    See Phoenixville , 1999 WL 184138, at *16 ("All the interactive process requires is that employers make a goodfaith effort to seek accommodations.");    Beck, 75 F.3d at 1135 ("A party that obstructs or delays the interactive process is not acting in good faith.  A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.");        Baert v. Euclid Beverage, Ltd.   , 149 F.3d 626, 634 (7th Cir. 1998) ("[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.").

The exact shape of this interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated.        See Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996).  For example, in a small company an employee might be reasonably expected to know what other jobs are available for which he or she would be qualified to perform.  On

---

[10](...continued)
needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working.").  Although there may be occasions where a reasonable accommodation   can be determined without an interactive process, typically the interactive process will be indispensable.  Thus, although in White, we stated that an interactive process was not a statutory requirement, 45 F.3d at 363, we agree with most of the circuits that have considered the issue that it is frequently an essential component of the statutory obligation to offer a reasonable accommodation   to an otherwise qualified disabled employee.

the other hand, in larger companies or companies where the employee does not have ready access to information regarding available jobs, it might be reasonable to require the employer to identify jobs that the employer reasonably concludes are appropriate for reassignment consideration. See EEOC Guidance, at 42-43 ("The employer is in the best position to know which jobs are vacant or will become vacant within a reasonable period of time."); cf. Woodman v. Runyon, 132 F.3d 1330, 1343 (10th Cir. 1997) ("[T]he employer has far greater access to information than the typical plaintiff, both about its own organization, and equally importantly, about the practices and structure of the industry as a whole.").

In the instant case, there is no dispute that Smith provided notice to Midland Brake of his skin condition and how it limited his performance in the light assembly department. However, there appears to be a genuine dispute about whether Smith suggested at least the possibility of a reassignment. Midland Brake asserts he did not, pointing to Smith's sworn statement made in an initial application for social security disability benefits that he was "totally disabled and unable to work." Smith asserts that he did, pointing in part to the testimony of Jon Anderson, the Health and Safety Coordinator working within the Human Resources Department for Midland Brake, that when Smith dropped by every week to pick up his temporary total disability check, Smith "expressed to me a

- 38 -

desire to return to work," and that Smith asked Anderson, "[H]ave you found some work for me to do?", which was typically answered with "I'm looking, and I'll contact you as soon as I have something lined up." For purposes of summary judgment on the record before us, there is enough to conclude that Smith at least raised a genuine dispute of material fact on this issue, thereby triggering Midland Brake's reasonable interactive duties.

The district court found that Smith had failed to provide a medical release to return to work from his physicians, and it held that the ADA's interactive process does not require an employer affirmatively to seek out a release for an employee who has previously been taken off work by his or her physician. Therefore, the district court concluded that summary judgment for Midland Brake was appropriate. We disagree that this provides an adequate basis for summary judgment on this record. There are no doubt cases in which the employee's failure to provide a medical release is unreasonable, breaks down the interactive process, and thereby insulates the employer from ADA liability. See Templeton , 162 F.3d at 618-19 (where employer sent two letters requesting an updated Physician Certification regarding employee's ability to return to work, and where employee refused to authorize her physician to release the requested information, "the employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the

ADA by failing to provide reasonable accommodation"). On the other hand, there may be some cases in which it is reasonable for the employer affirmatively to seek out a medical release from an employee or at least to clarify for the employee exactly what is required before the employee can be reassigned to a new position. Indeed, in Smith's case, there appears to be genuine disputes about this very type of interactive exchange. For example, Smith contends that Midland Brake had an existing company policy of priority reassignment of disabled employees to vacant positions. That policy allegedly provided for discussions initiated by Midland Brake with the employee's physician to obtain a medical release. Additionally, Smith contends that Midland Brake is to blame for any failure to obtain a medical release. Smith argues he was never made aware of any vacant positions in Midland Brake, and had he been aware of such vacancies, his physicians might have released him to work in those new jobs. Also, Smith asserts that he was capable of filling a vacant data entry position in October 1992, and the only reason Midland Brake refused to reassign him was because no computer keyboard was available, not because of an absence of a medical release.

Without deciding this record-intensive inquiry today, we note only that summary judgment would be premature if there is a genuine dispute regarding whether Midland Brake participated in good faith in attempting to secure a reassignment position for Smith as part of its duty to offer a reasonable

- 40 -

accommodation to Smith. On remand, the district court should consider, among other things, whether Smith's failure to obtain a medical release was the result of any failure by Midland Brake to inform him of any vacancies; or the result of any undisclosed reliance by Midland Brake on the absence of a medical release; or perhaps whether Smith, in reliance on his near data entry reassignment, may reasonably have believed no further medical releases were necessary, at least until a replacement job was located. However, it should be emphasized that here we are only addressing Smith's potential ability to withstand summary judgment.

Even if Midland Brake failed to fulfill its interactive obligations to help secure a reassignment position, Smith will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position. See Phoenixville, 1999 WL 184138, at *19 ("To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate," inter alia, "the employee could have been reasonably accommodated but for the employer's lack of good faith."); Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) (holding that the employer's failure to interact with the employee does not per se insulate the employee from losing on summary judgment because the employee must still prove that a reasonable accommodation could have been made).

## 2. Reassignment is limited to existing jobs within the company.

It is not reasonable to require an employer to create a new job for the purpose of reassigning an employee to that job. See White, 45 F.3d at 362 (the ADA "does not require an employer . . . [to] create a new position to accommodate the disabled worker"); Still v. Freeport-McMoran, Inc., 120 F.3d 50, 53 (5th Cir. 1997) (employer has "no . . . statutory obligation [under the ADA] to create a new job for [the employee] at another location"); Smith v. Ameritech, 129 F.3d 857, 867 (6th Cir. 1997) ("The ADA does not require employers to create a new position for a disabled employee who can no longer perform the essential functions of his job."); Gile, 95 F.3d at 499 ("Nor is an employer obligated to create a 'new' position for the disabled employee."); Benson, 62 F.3d at 1114 ("The ADA does not require that [the employer . . . create a new position."); Willis v. Pacific Maritime Ass'n, 162 F.3d 561, 567 (9th Cir. 1998) ("In order for reassignment to a vacant position to be reasonable, an existing position must be vacant: there is no duty to create a new position for the disabled employee."); Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) (employer was not required to create a part-time position for employee where all part-time positions had already been eliminated from the company); Aka, 156 F.3d at 1305 ("[E]mployers are not required to . . . create a new position.").

### 3. The existing job must be vacant.

The ADA's list of reasonable accommodations specifically refers to "reassignment to a vacant position." Obviously then, under the terms of the statute, if a position is not vacant it is not reasonable to require an employer to bump another employee in order to reassign a disabled employee to that position. See White, 45 F.3d at 362 ("[T]he ADA does not require an employer to . . . reassign the employee to an occupied position."); Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1047 (7th Cir. 1996) ("[T]he suggestion that reassignment be to a vacant position suggests that Congress did not intend that other employees lose their positions in order to accommodate a disabled coworker.") (emphasis in original); H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345 ("The Committee also wishes to make clear [that] reassignment need only be to a vacant position -- "bumping" another employee out of a position to create a vacancy is not required."); EEOC Guidance, at 39 ("The employer does not have to bump an employee from a job in order to create a vacancy; nor does it have to create a new position.").

Similarly, an existing position would not truly be vacant, even though it is not presently filled by an existing employee, if under a collective bargaining agreement other employees have a vested priority right to such vacant positions.

See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995) (noting that the employees' suggestion of transfer is unreasonable because, given their lack of seniority, their collective bargaining agreement prohibits transfer to any other job); Aldrich , 146 F.3d at 1271 n.5 ("[H]ad Boeing transferred Aldrich to any of the last three disputed jobs -- Maintenance Oiler, Assembler Sub-Assembly B, and Assembler Installer General B--it would have violated the seniority provisions of the collective bargaining agreement.  This is not required by the ADA."); see also Pacific Maritime Ass'n , 162 F.3d at 567 ("However, the positions [the employees] requested were not 'vacant.'  The CBA provided that those jobs should be assigned based on seniority.  [The employees] could not transfer to these permanent light duty work positions because other employees with greater seniority were eligible for any opening . . . before either of them."); Eckles , 94 F.3d at 1047  ("[U]nder a seniority system like that in place at [the employer], few positions are ever truly 'vacant' in the sense of being unfilled. . . .  [A] 'vacant position' would essentially be one that an employee could acquire with his seniority and for which he could meet the job requirements."); Feliciano , 160 F.3d at 787 ("[E]ven if [the employee] sought the position of clerical ward aide, that position was filled based upon seniority, bargaining unit membership, and current job classification.").  See also Kralik v. Durbin, 130 F.3d 76, 83 (3d Cir. 1997); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997),

- 44 -

cert. denied, 118 S. Ct. 1050 (1998); Cassidy, 138 F.3d at 634; Benson, 62 F.3d at 1114; Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995).

Finally, "a vacant position" includes not only positions that are at the moment vacant, but also includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future.    See Monette , 90 F.3d at 1187 ("If, perhaps, an employer knows that a position for which the disabled applicant is qualified will become vacant in a short period of time, the employer may be required to offer the position to the employee.");    see also  EEOC Guidance, at 39 (" 'Vacant' means that the position is available when the employee asks for reasonable accommodation, or that the employer knows that it will become available within a reasonable amount of time.").

### 4. An employer need not violate other important fundamental policies underlying legitimate business interests .

Because reasonableness is our guide, there may be other important employment policies besides protecting rights guaranteed under a collective bargaining agreement that would make it unreasonable to require an employer to reassign a disabled employee to a particular job.  For example, an industry may have a well entrenched seniority system which, even though not rooted in a collective bargaining agreement, is so well established that it gives rise to

legitimate expectations by other, more senior employees to a job that the disabled employee might desire. Requiring an employer to disrupt and violate any such well-established reasonable expectations of seniority rights in order to favor a disabled employee in a job reassignment could, at least under some circumstances, constitute a fundamental and unreasonable alteration in the nature of the employer's business. See Aka, 156 F.3d at 1305 ("An employer is not required to reassign a disabled employee in circumstances 'when such a transfer would violate a legitimate, nondiscriminatory policy of the employer.'") (quoting Dalton, 141 F.3d at 679); Dalton, 141 F.3d at 678 ("Nothing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers."); Foreman, 117 F.3d at 810.

There may be other such important employment policies that it would not be reasonable for an employer to set-aside in order to accomplish reassignment of a disabled employee. We neither attempt here to itemize all such policies that may exist nor comment upon such policies which may be so fundamental to the way an employer does business that it would be unreasonable to set aside. See Dalton, 141 F.3d at 679 (collecting cases). On the other hand, other policies of an employer might have to be subordinated to an employer's reassignment obligation under the ADA because to do otherwise would essentially vitiate the

employer's express statutory obligation to employ reassignment as a form of reasonable accommodation. An obvious example would be where an employer has a policy against ever reassigning an employee to other positions within the company. Such a policy, if allowed to trump the ADA, would read out of the act the provision that reassignment is one of the appropriate reasonable accommodations. See id. ("An employer cannot, of course, convert its responsibility to look to a 'broad range' of jobs into a 'narrow band' simply by adopting a 'no transfer' policy."); United States v. City and County of Denver, 943 F. Supp. 1304, 1310-11 (D. Col. 1996) ("If reassignment is only required where a reassignment policy already exists for all employees, there would be no need for the ADA to provide that it be available for people with disabilities. To the contrary, the ADA requires employers to move beyond the traditional analysis used to appraise non-disabled workers and to consider reassignment to a vacant position as a method of enabling a disabled worker to do the job without creating undue hardship."); Leslie v. St. Vincent New Hope, Inc., 916 F. Supp. 879, 887 (S. D. Ind. 1996) ("[T]he plain language of the ADA may require reassignment even if the employer does not have a regular policy or practice of permitting non-disabled employees to transfer."); EEOC Guidance, at 41 ("[I]f an employer has a policy prohibiting transfers, it would have to modify that policy in order to reassign an employee with a disability, unless it could show undue hardship.").

- 47 -

## 5. Reassignment does not require promotion.

The ADA is designed to prevent discrimination against a qualified individual with a disability. It is not a statute giving rise to a right to advancement. Thus, the only positions that need to be considered for a reassignment are those that are not promotions. See White, 45 F.3d at 362 ("[T]he ADA does not require an employer to promote a disabled employee as an accommodation."); Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699 (7th Cir. 1998) ("[A]n employer does not have to accommodate a disabled employee by promoting him or her to a higher level position."); Cassidy, 138 F.3d at 634 ("[A] reassignment will not require . . . promoting the disabled employee."); 29 C.F.R. Pt. 1630, App. § 1630.2(o) ("It should also be noted that an employer is not required to promote an individual with a disability as an accommodation.") (citing Senate and House Reports); EEOC Guidance, at 40 ("Reassignment does not include giving an employee a promotion. Thus, an employee must compete for any vacant position that would constitute a promotion.") (emphasis omitted).

The employer should first consider lateral moves to positions that are regarded as equivalent. An employer may only consider lesser jobs that constitute a demotion if there are no such equivalent positions available. See Cassidy, 138 F.3d at 634 ("An employer may reassign an employee to a lower

grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available."); 29 C.F.R. Pt. 1630, App. § 1630.2(o) ("An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation."); EEOC Guidance, at 40 ("If there is no vacant equivalent position, the employer must reassign the employee to a vacant lower level position for which the individual is qualified.").

### 6. Employers may choose the proffered reassignment .

So long as it is consistent with the above requirements, the employer is free to choose the reassignment that is to be offered to the qualified individual with a disability. If the disabled individual rejects that reassignment, the employer is under no obligation to continue offering other reassignments. The ADA does not entitle an employee to a free ranging or perpetual right to a new position within the company. It requires the employer to use reasonable accommodation to keep the employee in his or her existing job, and if that cannot be accomplished, to use reasonable accommodation to offer a reassignment to another vacant job which

that person would be qualified to perform with or without a reasonable accommodation. Once the employer has offered such a reassignment, its duties have been discharged. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1137 (8th Cir. 1999) (en banc) ("If more than one accommodation would allow the individual to perform the essential functions of the position, 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'") (quoting 29 C.F.R. Pt. 1630, App. § 1630.9); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997) ("[The ADA's] use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires. This is so because the word 'reasonable' would be rendered superfluous in the ADA if employers were required in every instance to provide employees the maximum accommodation or every conceivable accommodation possible. . . . Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation.") (internal quotations and citations omitted); 29 C.F.R. § 1630.9(d) ("[I]f a [qualified individual with a disability] rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to

perform the essential functions of the position held or desired, and cannot, as a

result of that rejection, perform the essential functions of the position, the

individual will not be considered a qualified individual with a disability.").[11] See

also Baert, 149 F.3d at 633 ("An employer is not obligated to provide an

employee the accommodation he or she requests or prefers . . . ."); Aka, 156 F.3d

at 1305 (same).

> **7.      Employer need offer only a reassignment as to which the employee is qualified with or without reasonable accommodation.**

It would not be reasonable to require an employer to reassign an employee

to a position for which he or she is not otherwise qualified with or without

reasonable accommodation, or to require a redefinition of the essential

requirements of a vacant job so as to bring it within the qualification of a disabled

employee. Although some "job restructuring" may be required, see 42 U.S.C.

§ 12111(9), if the job restructuring goes to the modification of essential job

requirements and is substantial, it is not required. See Milton, 53 F.3d at 1124

---

[11] Two Courts of Appeals have tied this issue into the "otherwise qualified individual with a disability" language. That is, when an employee refuses one reasonable accommodation, that person is no longer considered a "qualified individual with a disability." See Hankins v. The Gap, Inc., 84 F.3d 797, 802 (6th Cir. 1996); Schmidt v. Methodist Hosp. of Indiana, Inc., 89 F.3d 342, 344-45 (7th Cir. 1996).

("An employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job.").

### 8. "Undue hardship" limitation.

Finally, no reassignment need be offered if it would create an "undue hardship" on the employer. See 42 U.S.C. §§ 12112(5)(A), 12111(10). We have already defined the term "undue hardship" in Rascon v. U.S. West Communications, Inc. , 143 F.3d 1324, 1334 (10th Cir. 1998), in which we stated:

> "Undue hardship" means an action requiring significant difficulty or expense when considered in light of various factors. The factors to be considered in determining whether an accommodation would cause an employer undue hardship are, among others:  the nature and cost of the accommodation;  the number of persons employed by the company;  the financial resources of the company;  and the impact of the accommodation upon the operation of the company.

Id. (quotations and citations omitted). That definition by necessity requires a case-by-case analysis and upon remand it will certainly be available to Midland Brake to argue that any reassignment of Smith creates an undue hardship.

\*          \*          \*

This framework, using well-defined principles that have evolved under the ADA, is a starting point for defining the contours of Midland Brake's obligation to offer the accommodation of reassignment within the context of the factual

claims being asserted by Smith  .  What is "reasonable" and what is an "undue

hardship" of necessity has a heavy factual component and will have to be

determined in the first instance by the district court on remand.

### III.  Summary Judgment Framework

We apply the foregoing principles in the context of summary judgment by

invoking the familiar burden shifting approach set forth in <u>McDonnell Douglas</u>

<u>Corp. v. Greene</u>, 411 U.S. 792 (1973).[12]  That burden shifting approach has been

specifically adopted to ADA claims for failure reasonably to accommodate the

disabled employee.  <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 360-61 (10th Cir.

1995).  The approach that we adopted in <u>White</u> needs only minor modification to

address the specific subset of reasonable accommodation that constitutes

"reassignment to a vacant position."

_____

[12] The purpose of a burden shifting approach is a bit different in an ADA
Failure to Accommodate case.  In such a case, the Congress has already
determined that a failure to offer a reasonable accommodation to an otherwise
qualified disabled employee <u>is</u> unlawful discrimination.  <u>See</u> 42 U.S.C. §
12111(b)(5)(A) ("the term 'discriminate' includes . . . not making reasonable
accommodations. . .").  Thus, we use the burden-shifting mechanism, not to probe
the subjective intent of the employer, but rather simply to provide a useful
structure by which the district court, when considering a motion for summary
judgment, can determine whether the various parties have advanced sufficient
evidence to meet their respective traditional burdens to prove or disprove the
reasonableness of the accommodations offered or not offered.  <u>See</u> <u>White</u>, 45 F.3d
at 361 n.6.

To survive summary judgment on an ADA claim of failure to accommodate by offering reassignment to a vacant position, the employee initially bears the burden of production with respect to a prima facie case. For the employee to make such a prima facie case, he or she must make an initial showing that:

(1)     The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;

(2)     The preferred option of accommodation within the employee's existing job cannot reasonably be accomplished.

(3)     The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;

(4)     The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and

(5)     The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

Once the employee produces evidence sufficient to make a facial showing on his or her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer. See 42 U.S.C. § 12113; 29 C.F.R. § 1630.15. If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of his or her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements.

After considering the submissions by both sides on summary judgment, if there remains genuine evidence supporting each element of the employee's prima facie case and, if need be, disputing the employer's affirmative defenses, summary judgment for the employer should be denied and the matter must proceed to trial. At trial, it will be the employee's burden to prove that he or she was a qualified individual with a disability; that the preferred option of accommodation within the employee's existing job cannot reasonably be

accomplished; that he or she had requested reassignment to a vacant position as a reasonable accommodation; that he or she was qualified, with or without reasonable accommodations, to perform one or more specific vacant jobs shown at trial to have existed within the company at or about the time that the request for reassignment was made; and that the employee suffered injury because the employer did not offer reassignment to the employee to an appropriate vacant position within the company.

Here, the record establishes a genuine dispute of material fact regarding whether Smith sufficiently invoked the interactive process and, if so, whether Midland Brake adequately responded to a request for reassignment. Thus, summary judgment on the record before us was inappropriate on that issue. We do not, of course, suggest that summary judgment might not be appropriate upon a different record or upon a different issue in this or other ADA cases where the plaintiff seeks reassignment as a remedy. Although reasonableness is the underlying qualifier on an employer's duty to reassign, there may be cases where, for example, the record is clear that the employee failed to take the necessary steps to initiate or participate in the interactive process or there may be cases where reassignment would be unreasonable as a matter of law, and in those cases summary judgment would be appropriate for the employer. For example, an employer might be entitled to summary judgment if the record established that

reassignment would violate a collective bargaining agreement, or would constitute a promotion, or would be to a position to which the employee is not qualified, with or without reasonable accommodation. On the other hand, there may be cases where it is undisputed that the interactive process was adequately initiated by the employee and the facts are undisputed that the employer failed in its burden to offer reassignment as a form of reasonable accommodation. In such a situation, summary judgment might be appropriate for the employee. Just because reasonableness is the touchstone of this obligation does not shield a reassignment claim from summary judgment any more than does the reasonableness standard shelter other courses of action from a traditional summary judgment inquiry. See, e.g., Meyer v. Conlon, 162 F.3d 1264, 1273-74 (10th Cir. 1998) (affirming summary judgment for insurer in suit for breach of duty of good faith and fair dealing in insurance contracts where the underlying facts do not suggest conduct going beyond "a reasonable denial" of an insurance claim) (per curiam); Hollingsworth v. Hill, 110 F.3d 733, 740-42 (10th Cir. 1997) (affirming summary judgment for a sheriff's deputy, finding him entitled to qualified immunity because it was "objectively reasonable" for an officer in the defendant's position to believe that his actions were constitutional). On remand, the parties are free to raise such other claims, factual or legal, as may support summary judgment, and

the district court may then be required to consider such claims, consistent with the standards announced in this opinion.

## IV. Conclusion

We REVERSE the district court order granting summary judgment and we REMAND this matter to the district court for further consideration consistent with this opinion.

No. 96-3018, Robert W. Smith v. Midland Brake, Inc., a Division of Echlin, Inc.

**KELLY**, Circuit Judge, joined by **BALDOCK** and **BRORBY**, Circuit Judges, concurring in part and dissenting in part.

I concur in the court's opinion that a "qualified individual with a disability" under the Americans with Disabilities Act (ADA) includes an employee who with or without reasonable accommodation can perform a reassigned job, even though the employee is unable to perform his existing job. I dissent from the court's opinion concerning the scope of the reassignment right, specifically that such an employee has a right to be reassigned to a vacant position, regardless of whether other more qualified individuals are seeking the position.

Generally, an employer is required to make a reasonable accommodation unless it can demonstrate undue hardship. See 42 U.S.C. § 12112(b)(5)(A). Determining a reasonable accommodation almost always will require communication between the parties. See 29 C.F.R. § 1630.2(o)(3). The ADA contains several measures of reasonable accommodation that should be considered. Reassignment to a vacant position is one of them. See 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii). Reassignment to a vacant position ordinarily will be preceded by consideration of the other measures that will allow an existing employee to perform the essential functions of his or her job. See 29 C.F.R. App. § 1630.2(o). Like all of the measures described as examples of reasonable accommodation, however, reassignment is an option that depends upon the facts and circumstances. Contrary to the court's view, merely because

discrimination under the ADA may include not making reasonable accommodation, the measures described as examples of reasonable accommodation do not become mandatory in every case–such an approach would read out the words "may include" that precede the nonexclusive list of examples of reasonable accommodation. See 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(2). Where the employer chooses to reassign a disabled employee no longer able to perform the essential functions of his job, the employer obviously has made a decision that benefits the employer and the employee. Reassignment rather than termination should be the rule when a vacant position will not be advertised or filled based upon applications or bids.

The more difficult question confronting the court is whether such an employee, minimally qualified for a position that others are interested in, must be awarded the position because of his or her disability. To be sure, the employee is a qualified individual with a disability, but that status is not sufficient to confer a preference for a vacant position that the employer would like to fill competitively. Courts must resist the temptation to "improve" upon Congress's work. Rather, the ADA complements existing federal and state laws that encourage an employer to consider all persons on their merits. So long as a person with a disability can perform the essential functions of the vacant job with or without reasonable accommodation, that person, like all others, should be

afforded equal consideration without regard to disability, perceived or otherwise.

Congress made this abundantly clear. See H.R. Rep. No. 101-485 (II), at 55-56

(1990), reprinted in 1990 U.S.C.C.A.N. 303, 337-338.[1]  The court's response to

---

[1]  In discussing the term "qualified individual with a disability," the legislative history makes it clear that the ADA was never intended to create a preference:

> [T]he Committee intends to reaffirm that this legislation does not undermine an employer's ability to choose and maintain qualified workers.  This legislation simply provides that employment decisions must not have the purpose or effect of subjecting a qualified individual with a disability to discrimination on the basis of his or her disability.
> Thus, under this legislation an employer is still free to select applicants for reasons unrelated to the existence or consequence of a disability.  For example, suppose an employer has an opening for a typist and two persons apply for the job, one being an individual with a disability who types 50 words per minute and the other being an individual without a disability who types 75 words per minute.  The employer is permitted to choose the applicant with the higher typing speed, if typing speed is necessary for successful performance on the job.
> On the other hand, if the two applicants are an individual with a hearing impairment who requires a telephone headset with an amplifier and an individual without a disability, both of whom have the same typing speed, the employer is not permitted to choose the individual without a disability because of the need to provide the needed reasonable accommodation to the person with the disability.
> In the above example, the employer would be permitted to reject the applicant with a disability and choose the other applicant for reasons not related to the disability or to the accommodation or otherwise not prohibited by this legislation.  In other words, the employer's obligation is to consider applicants and make decisions without regard to an individual's disability, or the individual's need for a reasonable accommodation.  But, the employer has no

(continued...)

this uniform legislative history is that it (1) only applies to initial applicants, (2) only confirms that an employer need not modify the essential functions of a job, and (3) is trumped by another reference, infra n.3, recognizing that reassignment can be beneficial to the employer and employee. Yet, the language is not so limited. It reaffirms that "this legislation," *i.e.*, the ADA, does not interfere with "an employer's ability to choose and maintain qualified workers," nor interfere with an employer's applicant selection "for reasons unrelated to the existence or consequence of a disability," nor create an obligation for an employer "to prefer applicants with disabilities over other applicants on the basis of disability." H.R. Rep. No. 101-485 (II), at 55-56 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337-338. Surely requiring an employer to reassign an existing employee to a vacant position, regardless of other more qualified applicants, ignores these concerns.

The ADA was enacted pursuant to a finding that disability discrimination "denies people with disabilities the opportunity to compete on an equal basis and pursue those opportunities for which our free society is justifiably famous," 42

---

[1](...continued)
obligation under this legislation to prefer applicants with disabilities over other applicants on the basis of disability.

H.R. Rep. No. 101-485 (II), at 55-56 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337-338. Any approach that allows preferences for current disabled employees in reassignment situations conflicts with this clear statement.

U.S.C. § 12101(a)(9) (findings) (emphasis supplied). We have recognized that merely because reassignment should be considered as a reasonable accommodation, it does not require the employer to promote, reassign to an occupied position, or create a new position. See White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir. 1995). The Seventh Circuit has discussed the underlying rationale for this rule:

> [W]e have been unable to find a single ADA or Rehabilitation Act case in which an employer has been required to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer, . . . and for good reason. The contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees.

Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 679 (7th Cir. 1998). Accord Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 (11th Cir. 1997) (per curiam).

Other cases reinforce that any potential reasonable accommodation must accord with the fair and impartial consideration deserved by all individuals, be they current employees or applicants. In Daugherty v. City of El Paso, 56 F.3d 695 (5th Cir. 1995), the Fifth Circuit rejected the idea that reassignment as a reasonable accommodation required the employer to find the employee another part-time position–to succeed on an ADA claim, the employee would have prove

that he was treated differently than other displaced employees because of his disability. See id. at 700. The court stated:

> [W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less.

Id. The court rejected the notion that the employer had any obligation to reasonably accommodate part-time employees with reassignment given a city policy that preferred full-time employees over part-time employees in filling vacancies. See id. at 699-700.

The Second Circuit has considered this issue in the context of an injured employee seeking reassignment to a position with a different supervisor. See Wernick v. Federal Res. Bank of N.Y., 91 F.3d 379 (2d Cir. 1996). The court concluded that working with the assigned supervisor was an essential function of the employee's job, and then rejected the suggestion that the employer had an affirmative duty to reassign:

> [N]othing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons. . . . [T]he [employer] only had an obligation to treat her in the same manner that it treated other similarly qualified candidates.

Id. at 384-85.

Finally, the Eleventh Circuit rejected the idea that another potential reasonable accommodation, "part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), required such schedules where the employer had phased out such positions. See Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998). Responding to the obvious inequity of preferring a disabled employee over a non-disabled employee whose part-time job had been phased out, the court stated:

> The ADA was never intended to turn nondiscrimination into discrimination.
> . . . .
> We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers.

Id. at 627.  Given the controversial nature of preferences in employment, courts have been understandably reluctant to read one into the ADA that is at odds with the qualified language of the statute and its legislative history.  See Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1314-15 (D.C. Cir. 1998) (en banc) (Silberman, J., dissenting) ("If the Congress had intended to grant a preference to the disabled–a rather controversial notion–it would certainly not have done so by slipping the phrase "reassignment to a vacant position" in the middle of this list of reasonable accommodations.").

The court faults reliance on the above cases because they reject reassignment for reasons other than the existence of a more qualified applicant for a competitive position.  Be that as it may, these cases do discuss reassignment as

a remedy and uniformly reject it for reasons that should inform our judgment about the scope of the right. Stated another way, those reasons are equally applicable here. Whether we defer to an employer's legitimate non-discriminatory reason for not reassigning (which surely could include merit selection), or emphasize that the ADA does not create a preference, the scope of the right has been narrow. See, e.g., Dalton, 141 F.3d at 679-80 (no duty to reassign to temporary positions or light-duty program); Duckett, 120 F.3d at 1225 (upholding business policy against certain types of transfers); Wernick, 91 F.3d at 384-85 (rejecting suggestion that employer had a responsibility to provide an employee another job for which she was qualified because affirmative action not required); Daugherty, 56 F.3d at 700 (upholding city's policy of favoring full-time employees over part-time employees). We should be wary of adopting a reassignment right that unquestionably will affect employer operations and the rights of other employees. Cf. Aka, 156 F.3d at 1305 n.29. Although the court expresses concern that not creating a preference for a reassignment position would encourage an employer to shirk all forms of reasonable accommodation, see Ct. Op. at 24 n.6 & 29, such an employer strategy would not be very successful given an employer's burden of production on any inability to accommodate and the employee's opportunity to rebut such a showing. See White, 45 F.3d at 361.

The court concludes that the reassignment provision means "more than a duty merely to consider without discrimination a disabled employee's request for reassignment along with all other applications the employer may receive from other employees or job applicants for a vacant position." See Ct. Op. at 15; Aka,156 F.3d at 1304-05.[2]  While it is true that the statute does not read "consideration of a reassignment to a vacant position," id. at 15, all of the measures described are examples of reasonable accommodation that may be appropriate.  All are subject to the legitimate and nondiscriminatory policies of the employer.  Thus, the phrase "may include reassignment to a vacant position" cannot mean "shall include reassignment to a vacant position."  Though the court acknowledges that "various accommodations may or may not be appropriate depending upon the disability and other circumstances of employment," Ct. Op. at

---

[2]    None of the cases the court relies upon directly address a situation where an employer has other qualified applicants and would like to choose the most qualified for the vacant position–most simply indicate that an employer either has a duty or may have a duty to reassign subject to a myriad of exceptions, all such exceptions endorsed by this court.  See Mengine v. Runyon, 114 F.3d 415, 418-19 (3d Cir. 1997); Gile v. United Airlines, Inc., 95 F.3d 492, 498-99 (7th Cir. 1996); Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1187 (6th Cir. 1996); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114-15 (8th Cir. 1995); Community Hosp. v. Fail, 969 P.2d 667, 677-78 (Colo. 1998).  The D.C. Circuit inferred that because cases discussing reassignment have not mentioned a requirement that a plaintiff show he or she would have been granted a reassignment position over other qualified applicants, such a requirement does not exist.  See Aka, 156 F.3d at 1304.  Because courts do not decide what is not before them, it is not surprising that such a requirement has not yet developed.

24 n.7, it fails to give effect to this observation insofar as it imposes a mandatory duty to reassign an otherwise qualified individual with a disability, subject to an employer's <u>defense</u> of undue hardship.  <u>See</u> 42 U.S.C. §§ 12112(b)(5)(A); 12111(10).

The court also suggests that because the ADA already prohibits discrimination upon application for a vacant position, the reassignment provision must confer an additional right to avoid redundancy.  <u>See</u> Ct. Op. at 16-17; <u>Aka</u>, 156 F.3d at 1304.  Under the court's rationale, because the general prohibition on disability discrimination speaks to the "terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), all of the potential reasonable accommodations, such as job restructuring and part-time or modified work schedules, confer greater rights upon current employees vis-a-vis the employer than mere applicants have.  We know that this is not the case.  <u>See</u> <u>White</u>, 45 F.3d at 362; <u>see also</u> H.R. Rep. No. 101-485 (II), at 62-63, <u>reprinted in</u> 1990 U.S.C.C.A.N. 303, 344-45 (discussing part time or modified work schedules as a reasonable accommodation for individuals).

Moreover, other equally plausible reasons exist for the reassignment provision.  First, it precludes an employer from a blanket ban on reassignments.  <u>See</u> <u>Dalton</u>, 141 F.3d at 679; H.R. Rep. No. 101-485 (II), at 58, <u>reprinted in</u> 1990 U.S.C.C.A.N. 303, 340.  Second, it protects a disabled employee seeking

accommodation via reassignment from being deemed less qualified for, and thus not reassigned to, a vacant position on the basis of his or her disability. Third, it makes it express that an employer may reassign when other efforts at reasonable accommodation are not availing, and still be in compliance with the ADA.[3] The reassignment provision can be read in harmony with the statute and its legislative history. The EEOC's Interpretive Guidance to the contrary, see EEOC Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act at 44 (1999), is not entitled to special deference, particularly where it conflicts with the language of the ADA and its legislative history. See

---

[3]     The legislative history suggests that consideration of other forms of accommodation should precede consideration of reassignment:

> Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker. Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is considered. The Committee also wishes to make clear the reassignment need only be to a vacant position–"bumping" another employee out of a position to create a vacancy is not required.

H.R. Rep. No. 101-485 (II), at 63, reprinted in 1990 U.S.C.C.A.N. 303, 345. Accord 29 C.F.R. App. § 1630.2(o) (1998). The court concludes that the last sentence indicates that Congress intended that the reassignment right give a disabled employee a preference for a vacant position over other applicants. See Ct. Op. at 26-27; Aka, 156 F.3d at 1304. Such a reading is tempered by the preceding sentence which indicates that reassignment need only be "considered."

-11-

Sutton v. United Air Lines, Inc., 130 F.3d 893, 899 n.3, 902 (10th Cir. 1997),

cert. granted, 119 S. Ct. 790 (1999).

Finally, the complexity that surrounds the explication of the court's new rule undercuts its practical utility both for the district court and an employer. The numerous exceptions attest to its transparency–the new rule is swallowed up by its exceptions. The district court's task on summary judgment will be daunting–it may be far easier to try cases that would have been candidates for summary judgment absent this decision. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) (summary judgment is designed to isolate factually unsupported claims). Perhaps there will be fewer such claims, however, because an employer reading the court's opinion likely would feel compelled to reassign a disabled employee rather than attempt to understand its obligations pertaining to the interactive process or the scope of "appropriate" considerations.

Because a level playing field is what Congress and the President envisioned when the ADA was enacted, not a preference, I respectfully dissent on this issue. I would remand the case to the panel for further consideration of the ADA claim in light of the above principles.

F I L E D
United States Court of Appeals
Tenth Circuit

MAR 13 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ROBERT W. SMITH,

        Plaintiff - Appellant,

    v.

MIDLAND BRAKE, INC., a division
of Echlin, Inc.,

        Defendant - Appellee.

--------------------------

EQUAL EMPLOYMENT ADVISORY
COUNCIL,

        Amicus Curiae.

No. 96-3018

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 94-4165-DES)

---

Submitted on the briefs:[*]

Les E. Diehl, of Goodell, Stratton, Edmonds & Palmer, Topeka, Kansas, for
Plaintiff-Appellant.

---

    [*]After examining the briefs and the appellate record, this three-judge panel
has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th
Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

James Allan Smith, Daniel M. Shea, and Craig P. Siegenthaler, of Smith, Currie & Hancock, Atlanta, Georgia, and Mary Kathleen Babcock, of Foulston & Siefken Law Offices, Wichita, Kansas, for Defendant-Appellee.

Douglas S. McDowell, Ann Elizabeth Reesman, and Ellen Duffy McKay, of McGuiness & Williams, Washington, DC, filed an amicus curiae brief for the Equal Employment Advisory Council.

---

Before **TACHA**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Plaintiff Robert Smith alleges that his former employer, defendant Midland Brake, Inc., terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and Kansas state law on retaliatory discharge. The district court entered summary judgment for the defendant on all claims. Plaintiff appeals the order of summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

Between 1986 and 1993, plaintiff Robert Smith was employed by the defendant, Midland Brake, Inc., in a light assembler position. During this time, plaintiff experienced problems with chronic dermatitis on his hands as well as some muscular injuries. As a result, his physicians placed restrictions on his work activities and on several occasions ordered him to stop working for limited

periods. The defendant attempted to accommodate plaintiff's limitations by assigning him to duties within the light assembly department that involved less lifting and less exposure to irritants and by providing him compensation claim for the dermatitis on May 8, 1992. From May 6, 1992, until the time of his termination, plaintiff was on a leave of absence and was receiving workers' compensation benefits. On March 3, 1993, defendant agreed to pay plaintiff $20,000 to settle his workers' compensation claim for the dermatitis. On or about the same date, defendant terminated the plaintiff's employment with Midland Brake, citing an inability to accommodate his skin sensitivity.

The parties dispute exactly what happened between May 1992 and March 1993. Mr. Smith alleges that Midland Brake had a policy of giving employees who became disabled and could not perform their current positions priority over other employees for reassignment to open positions. He contends that there were numerous job openings at Midland Brake that should have been made available to him and asserts that defendant either could have obtained or did obtain releases from his physician for him to work in those positions. Midland Brake, on the other hand, contends that it made efforts to return plaintiff to work in different positions at the company but was unable to obtain a written release from plaintiff's physician allowing him to return to work.

On September 7, 1994, plaintiff filed a complaint in the United States District Court for the District of Kansas. In his complaint, plaintiff asserted that he was discharged in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[1] In addition, plaintiff asserts that, in violation of Kansas law and public policy, he was discharged in retaliation for pursuing his workers' compensation claim. The district court entered summary judgment for the defendant on each of these claims. We hold that plaintiff has failed to establish a prima facie case under either the ADA or the ADEA, and affirm on each of those claims as discussed below. We also affirm the entry of summary judgment on the retaliatory discharge claim.

### DISCUSSION

We review a district court's grant of summary judgment de novo. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[1] In his amended complaint, plaintiff also asserted violations of the Kansas state counterparts to the ADA and the ADEA, but he has not pursued those claims on appeal.

summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,' summary judgment in favor of the moving party is proper." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

1.     **ADA Claim**

The ADA prohibits employers from discriminating against qualified individuals with disabilities, because of the disabilities, in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment. See 42 U.S.C. § 12112(a). To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, i.e., with or without reasonable accommodation, he is still able to perform the essential functions of his job; and (3) that his employer fired him because of his disability. See White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995). A person is considered disabled within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). For the purposes of this appeal, we will assume that Mr. Smith is disabled within the meaning of the ADA. Nonetheless, we find that he is unable

to set out a prima facie case under the ADA because he is unable, even with reasonable accommodation, to perform the essential functions of his job.

To be protected under the ADA, a plaintiff must demonstrate that he is a "qualified individual with a disability." 42 U.S.C. §§ 12111(8), 12112(a). This inquiry is twofold:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if . . . we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

White, 45 F.3d at 361-62 (citations omitted); see also 42 U.S.C. § 12111(8) (defining "qualified individual with a disability"). Mr. Smith does not allege that he can perform the essential functions of his job in the light assembly department. In fact, he admits that because of his chronic dermatitis, his physicians considered him "permanently disabled" and unfit to work in that department. See Pl.'s First Am. Compl., Appellant's App. Vol. I, Ex. A, at ¶ 16. Furthermore, Mr. Smith has not alleged that there are any reasonable accommodations that would enable him to perform the essential functions of his job. Thus, it is undisputed that Mr.

Smith is not a "qualified individual with a disability" as that term is used in the ADA. There is no genuine issue as to this material fact.

Mr. Smith does not contest that he is no longer qualified for his old job, and he does not seek reinstatement to that position. Instead, he argues that the defendant is required, as a reasonable accommodation to his skin condition, to reassign him to another position at the company, outside of the light assembly department. We disagree.

Under the ADA and the corresponding guidelines promulgated by the Equal Employment Opportunity Commission (EEOC)[2], a reasonable accommodation may include reassignment to a vacant position. See 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2 (o)(2)(ii) (1997).[3] The guidelines state that, "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]." 29 C.F.R. Pt. 1630, App. § 1630.2(o); see also id. at Pt. 1630, App. § 1630.2(p)

_____

[2] "As an administrative interpretation of the Act by the enforcing agency, [EEOC guidelines], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986) (citations and internal quotation marks omitted).

[3] All our references to the C.F.R. are to the 1997 edition current at the time this opinion was drafted. The regulations we cite have not changed in any significant way since they were first promulgated in 1991 and 1992. See 29 C.F.R. Pt. 1614 (stating that source of Part 1614 is 57 Fed. Reg. 12646, Apr. 10, 1992, unless otherwise noted); id. Pt. 1630 (stating that source of Part 1630 is 56 Fed. Reg. 35734, July 26, 1991, unless otherwise noted).

(defining undue hardship as "significant difficulty or expense in, or resulting from, the provision of the accommodation").  In other words, reassignment can be used as a means of accommodating a disabled employee when accommodating him in his current position is <u>possible</u>, but difficult for his employer.  It follows that when it is not at all possible to accommodate an employee in his current position, there is no obligation to reassign.[4]  Here, it is undisputed that after the plaintiff's doctor ordered him to stop working in May 1992, no amount of accommodation would have made him qualified for his job in the light assembly department.  Thus, Midland Brake is not obligated under the ADA to transfer plaintiff to another position.[5]

In arguing that his employer should have accommodated him by reassigning him to a new position, plaintiff misconstrues the nature and purpose of the ADA. The Act is designed to combat discrimination against qualified disabled employees.  <u>See</u> 42 U.S.C. § 12101 (congressional findings and purpose of the ADA); <u>id.</u> at § 12112 (general rule prohibiting discrimination against qualified individuals with disabilities).  The Act does not require employers to

---

[4] We note, however, that reassignment is treated differently under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, which prohibits federal agencies from discriminating against disabled individuals.  <u>See generally</u> <u>Woodman v. Runyon</u>, 132 F.3d 1330 (10th Cir. 1997).  We discuss this aspect of the Rehabilitation Act in greater detail later in this opinion.

[5] As a result, it is unnecessary for us to reach the question of whether plaintiff is qualified for the other positions to which he seeks reassignment.

accommodate every employee who becomes disabled, but rather, only those who are still capable, with reasonable accommodation if necessary, of performing the essential functions of their jobs in spite of their disabilities—i.e., qualified individuals with disabilities. The ADA does not prohibit an employer from terminating an individual who can no longer perform the essential functions of his position even with reasonable accommodation. Such individuals fall outside the scope of the Act's protection. See Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 807-09 (5th Cir. 1997) (concluding that worker who could not perform essential functions of his current job and sought reassignment was not a qualified individual within the meaning of the ADA).[6] "[T]he duty of reasonable

_____

[6] The dissent takes issue with our citation of Foreman, stating that "the court [in Foreman] concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him." This summary of the Fifth Circuit's decision implies that the court felt it had to examine the possibility of reassignment for a plaintiff who could not perform his old job. The Foreman court, however, reached several alternative conclusions, holding against Foreman on three separate grounds. The court first found that Foreman was not disabled. See Foreman, 117 F.3d at 804-807. Then, in the part of the opinion to which we refer above, the court "[a]lternatively" held that Foreman did not show that he was a qualified individual under the ADA. Id. at 807-09. Finally, the court also determined, as a third alternative holding, that Foreman failed to show the reassignments he requested would be reasonable accommodations. See id. at 809-10. Thus, the Fifth Circuit examined reassignment not because it believed it was required to do so, but rather because it chose to do so as a third means of holding against the plaintiff. See id. at 809 ("[E]ven if Foreman was disabled and qualified under the ADA, his requested accommodations are not reasonable." (emphasis added)).

accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995); but see Gile v. United Airlines, 95 F.3d 492, 498 (7th Cir. 1996) (holding that ADA may obligate employer to reassign disabled employee who can no longer, even with reasonable accommodation, perform the essential functions of her job). The ADA "prohibits employment discrimination against qualified individuals with disabilities, no more and no less." Foreman, 117 F.3d at 810 (citations and internal quotation marks omitted); see also Wernick v. Federal Reserve Bank, 91 F.3d 379, 384 (2d Cir. 1996) ("[In enacting the disability statutes,] Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."); Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."), cert. denied, 116 S. Ct. 1263 (1996). Requiring employers to reassign disabled employees who no longer can perform their old jobs to substantially different positions goes beyond fighting discrimination. In the absence of clear direction from Congress, we decline to give the ADA the expansive interpretation advocated by plaintiff. See

Southeastern Community College v. Davis, 442 U.S. 397, 411 (1979) (noting that Congress "knew how to provide for [affirmative action] in those instances where it wished to do so").

Of course, employers are free to voluntarily reassign employees to new positions even when the ADA does not require them to do so. Plaintiff next asserts that Midland Brake "had an existing company policy of priority reassignment of disabled employees to vacant positions," Appellant's Br. at 21, and urges us to find an ADA violation because his employer allegedly failed to follow its own policy in his case. He argues that the ADA requires employers to follow their own policies for dealing with injured workers, even when those policies exceed the explicit requirements of the ADA. In support of this position, plaintiff points to School Board v. Arline, 480 U.S. 273 (1987), a Rehabilitation Act case in which the Supreme Court stated, in a footnote:

> Although [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.

Id. at 289 n.19 (citations omitted). This dicta simply states the obvious: employers cannot discriminate against disabled employees by preventing them from applying for other positions on the same basis as non-disabled individuals.

- 11 -

It also recognizes that, as a matter of administrative law, a governmental employer's failure to follow its own policies may give rise to an alternative claim, even when a claim under the disabilities statutes cannot succeed. See Guillot v. Garrett, 970 F.2d 1320, 1327 (4th Cir. 1992) (interpreting Arline passage to mean, at most, that "government agencies and departments must abide by their own regulations and existing statutes"); Carter v. Tisch, 822 F.2d 465, 468-69 (4th Cir. 1987) (rejecting plaintiff's Rehabilitation Act claim, but noting possible alternative claim that federal agency acted in arbitrary and capricious manner by terminating him). We decline to interpret the Arline footnote in a way that would impose an affirmative obligation on a private employer to find a new position for the disabled employee. Absent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA. "While [an employer] is free to exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law." Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995). To hold otherwise would discourage employers from developing their own plans for going beyond what federal law requires. "Employers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not work out."

Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir. 1997); see also

Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 545 (7th Cir. 1995)

("[I]f the employer . . . goes further than the law requires . . . , it must not be

punished for its generosity by being deemed to have conceded the reasonableness

of so far-reaching an accommodation.").  Moreover, Mr. Smith's allegation that

his employer reassigned other disabled employees does not demonstrate

discrimination based on disability.  When all employees to which plaintiff

compares himself are disabled, there is no logical inference of discrimination.

See Myers, 50 F.3d at 284.

Our decision that the ADA regulations do not require Midland Brake to

reassign Mr. Smith is bolstered by a comparison of the EEOC regulations

promulgated under section 501 of the Rehabilitation Act of 1973, Pub. L. No. 93-

112, 87 Stat. 357 (codified as amended at 29 U.S.C. § 701 et seq.).  The

Rehabilitation Act prohibits discrimination against disabled employees by federal

agencies, see 29 U.S.C. § 791 (codifying section 501 of the Act), and by programs

receiving federal financial assistance, see 29 U.S.C. § 794 (codifying section 504

of the Act).[7]  Section 501 requires federal agencies to develop affirmative action

---

[7] As it was originally enacted in 1973, the Rehabilitation Act did not mention reassignment at all.  See Gonzagowski v. Widnall, 115 F.3d 744, 748 (10th Cir. 1997).  In 1992, Congress amended the Rehabilitation Act to conform to the ADA's standards for employment discrimination, incorporating by

(continued...)

- 13 -

programs for the hiring, placement, and advancement of individuals with disabilities.  See 29 U.S.C. § 791(b).  By contrast, neither section 504 of the Rehabilitation Act nor the ADA creates such affirmative action obligations.  "It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by federal grantees under section 504 or those owed by employers under the ADA."  Woodman v. Runyon, 132 F.3d 1330, 1343 (10th Cir. 1997).  Thus, while the ADA and the Rehabilitation Act generally are to be interpreted and applied consistently with one another, see 29 U.S.C. §§ 791(g), 794(d); 42 U.S.C. §§ 12117(b), 12201(a); White, 45 F.3d at 360 n.5, the standards used to determine whether a federal employer has violated section 501 of the Rehabilitation Act will not always be identical to those employed in suits brought under section 504 or under the ADA.[8]   See, e.g., Southeastern Community College, 442 U.S. at 410-

_____

[7](...continued)
reference the ADA's inclusion of reassignment as a possible reasonable accommodation.  See 29 U.S.C. §§ 791(g), 794(d); Gonzagowski, 115 F.3d at 748.

[8] The notion that ADA claims and section 501 claims cannot always be resolved according to the same standards is recognized in the Rehabilitation Act itself, in the very provision that generally requires the cases to be resolved consistently.  The Act specifies that ADA standards are to be applied in section 501 "nonaffirmative action employment discrimination" cases, 29 U.S.C. 791(g) (emphasis added), implying that the same standards should not necessarily govern

(continued...)

- 14 -

411; Woodman, 132 F.3d at 1343.  In particular, this court recently noted that "the meaning of reasonable accommodation . . . may vary due to the heightened duties ascribed to federal employers under section 501."  Woodman, 132 F.3d at 1338; see also id. at 1339 n.8.

In recognition of the federal employer's heightened duties toward disabled individuals, the EEOC has promulgated rules for reasonable accommodation under section 501 that are stricter than those promulgated under the ADA.  According to these regulations, "[w]hen a nonprobationary [federal] employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position" for which the individual is qualified, unless doing so would impose an undue hardship on the agency.  29 C.F.R. § 1614.203(g) (emphasis added).  Thus, section 501 of the Rehabilitation Act "imposes an obligation on the federal employer to offer reassignment" to employees who cannot perform their old jobs.  Gonzagowski, 115 F.3d at 748.  In this way, the Rehabilitation Act regulations differ from the ADA regulations, which do not expressly mandate reassignment in those circumstances.  We find this difference significant.  Section 1614.203(g) shows that the EEOC knows how

---

[8](...continued)
in cases that implicate the affirmative action obligations of federal employers.

to make reassignment mandatory when it wants to do so. Cf. Southeastern Community College, 442 U.S. at 411 (determining that Congress did not intend to impose affirmative action obligations in section 504 and noting that Congress "knew how to provide for [affirmative action] in those instances where it wished to do so"). Because clear instructions of the sort found in section 1614.203(g) are absent from section 1630.2(o), we find it unlikely that the EEOC intended reassignment to be mandatory under the ADA, except under the limited circumstances we describe above.

The dissent faults us for focusing on "one isolated sentence"[9] of the EEOC guidelines and accuses us of overlooking later language which states: "An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified . . . ." 29 C.F.R. Pt. 1630, App. § 1630.2(o). This language, however, simply confirms that an employer may always voluntarily reassign an employee who can no longer perform her old job because of a disability. The discretionary or permissive nature of this provision becomes even more clear when contrasted

---

[9] I.e., "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. Pt. 1630, App. § 1630.2(o).

with the mandatory language, "shall offer to reassign," found in section 1614.203(g) of the guidelines. See 29 C.F.R. § 1614.203(g).

For these reasons, we affirm the district court's entry of summary judgment for the defendant on Mr. Smith's ADA claim. We hold that under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job which he currently holds (or, as here, from which he was terminated), the employing entity has no obligation to consider reassigning him to another position. Under the current EEOC guidelines, the employer's obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.[10]

In conclusion of our discussion of Mr. Smith's ADA claim, we note that the district court seems to have relied at least in part on an estoppel theory when it entered summary judgment for the defendant. See Smith v. Midland Brake, 911 F. Supp. 1351, 1357-61 (D. Kan. 1995). The district court pointed out that Mr. Smith had sought disability benefits from the Social Security Administration (SSA) several times between October, 1992, and April, 1993, certifying that he was "totally disabled and unable to work." Id. at 1356. Eventually, he was

---

[10] Even in those cases where the ADA may require the employer to consider reassignment as a reasonable accommodation, there are limits to the employer's obligation. For example, an employer is not required to create a new position for the plaintiff or to bump another employee in order to create a vacancy. See White, 45 F.3d at 362.

- 17 -

granted the benefits he sought.[11]  We wish to make clear that under the law of this circuit, Mr. Smith is not judicially estopped from now making claims that are inconsistent with his prior representations to the SSA.  See United States v. 49.01 Acres of Land, 802 F.2d 387, 390 (10th Cir. 1986) ("The Tenth Circuit . . . has rejected the doctrine of judicial estoppel.").  Hence, any reliance by the district court on an estoppel theory was misplaced.  We rely directly on the language of the Act and the accompanying EEOC regulations.  The precise impact, if any, of prior SSA representations on a plaintiff's ADA claim is still an open question in this circuit and one that we do not decide today.  For a discussion of how other circuits have handled the issue, see Talavera v. School Board, 129 F.3d 1214, 1217-1220 (11th Cir. 1997).

### 2.  ADEA Claim

Mr. Smith next claims that Midland Brake terminated him in violation of the ADEA.  To establish a claim of age discrimination under the ADEA, a plaintiff must show that (1) he was within the protected age group at the time of the discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person, or he was treated less favorably than younger employees.  See Gonzagowski v. Widnall, 115 F.3d 744, 749 (10th Cir.

---

[11]  Mr. Smith ultimately opted not to take the disability benefits after being informed by the SSA that he would benefit financially by declining the award of disability benefits and accepting early retirement benefits instead.

1997). Mr. Smith meets the first requirement because he was 62 years old at the time of his termination. See 29 U.S.C. § 631(a) (extending protection of ADEA to individuals between 40 and 70 years of age). However, he fails the second prong of the test. As discussed above, Smith concedes that he was unable to continue working in the light assembly department as of May, 1992, and it is undisputed that he did not work for Midland Brake at all between May 1992 and the time of his discharge in March 1993. Thus, he cannot meet the requirement of "satisfactory work." The ADEA does not require employers to provide any sort of accommodations for employees who become unable to perform their jobs. We agree with the district court's holding that there is no genuine issue of material fact as to the plaintiff's ADEA claim and affirm the grant of summary judgment in favor of the defendant on that claim.

### 3. Retaliatory Discharge Claim

Finally, Mr. Smith claims that, in violation of Kansas law and public policy, the defendant terminated him in retaliation for his filing of workers' compensation claims. Again, the undisputed fact that Mr. Smith was unable to perform his old job is dispositive. Under Kansas law, an employee with a workers' compensation claim may be lawfully discharged and cannot maintain a retaliatory discharge action if he is unable to perform his work. See Rowland v. Val-Agri, Inc., 766 P.2d 819, 822 (Kan. Ct. App. 1988) (rejecting retaliatory

- 19 -

discharge claim of employee who could no longer perform his job).  Plaintiff's physical inability to perform the job from which he was terminated precludes him from prevailing on a retaliatory discharge claim.  Thus, we affirm the entry of summary judgment for defendant on the retaliatory discharge claim.

## CONCLUSION

Mr. Smith concedes that he is unable to perform the job from which he was terminated.  Because he cannot perform the essential functions of that position, with or without reasonable accommodation, he does not qualify for protection under the ADA.  Furthermore, his undisputed inability to perform his job prevents him from establishing a prima facie case of age discrimination under the ADEA and also prevents him from claiming he was illegally discharged in retaliation for his worker's compensation claim.  Thus, we **AFFIRM** the district court's entry of summary judgment for the defendant on plaintiff's ADA claim, his ADEA claim, and his claim of retaliatory discharge.

No. 96-3018, <u>Smith v. Midland Brake, Inc.</u>

BRISCOE, Circuit Judge, concurring and dissenting:

I concur in the majority's conclusion that the district court correctly rejected Smith's ADEA and state law retaliatory discharge claims. After some additional clarification, I also agree with the majority's conclusion that the district court erred in concluding Smith was judicially estopped from bringing his ADA claim because he filed a claim for social security disability. However, I respectfully dissent from the majority's conclusion that

> under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job which he currently holds . . ., the employing entity has no obligation to consider reassigning him to another position. Under the current EEOC guidelines, the employer's obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.

I would conclude the ADA requires an employer to consider reassignment to a vacant position when the employee cannot perform his current job at all or can only perform it with accommodation that poses undue hardship to the employer. There is no statutory language, legislative history, case law, or administrative interpretation limiting reassignment to employees who can perform their current jobs only with accommodations that cause the employer undue hardship.

The majority's conclusion is contrary to the statutory language of the ADA. The ADA prohibits discrimination in employment against qualified individuals

with disabilities.  Title 42 U.S.C. § 12112(a) provides no employer covered by the Act "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer can demonstrate the accommodation would impose an undue hardship on the operation of its business.  42 U.S.C. § 12112(b)(5)(A).  See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996).  Title 42 U.S.C. § 12111(9)(B) provides examples of reasonable accommodation:

> The term "*reasonable accommodation*" *may include*--
>     . . .
>     (B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

(Emphasis added.)  Title 42 U.S.C. § 12111(8) defines a qualified individual with a disability as one who, with or without reasonable accommodation, can perform

the essential functions of "the employment position that such individual holds or desires."[1]

The phrase "the employment position that such individual . . . desires" is broad enough to include vacant positions available for reassignment to current employees as well as positions sought by applicants. Thus, under the plain language of the ADA, an employee who is unable to perform the essential functions of the job he currently holds with or without reasonable accommodation, but who is able to perform the essential functions of a vacant position with or without reasonable accommodation, is a qualified individual with a disability. See Daugherty v. City of El Paso, 56 F.3d 695, 698-99 (5th Cir. 1995). In Daugherty, the city argued because plaintiff could no longer perform his current job, he was not a qualified individual with a disability and the city had no duty to accommodate him by reassignment to a vacant position. The court rejected the city's argument:

> Contrary to the city's position, we do not read the statutory reference to employment an individual "desires" as applicable only to job applicants. Instead, we read this language as extending to individuals like Daugherty who are already employed and then become disabled, since the broad prohibition against discrimination found in 42 U.S.C. § 12112(a) extends not only to hiring and job application procedures, but to advancement,

---

[1] The EEOC regulations use the same language. Like the statute, 29 C.F.R. § 1630.2(m) uses the phrase "the employment position such individual . . . desires," and subsection (o) expressly provides that reasonable accommodation may include reassignment to a vacant position.

discharge of employees, "and other terms, conditions, and privileges of employment."

56 F.3d at 699.[2]

The majority notes the EEOC's interpretive guidelines are not controlling authority, see <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 65 (1986), but treats one isolated sentence in the guidelines as determinative of this reassignment issue: "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]." 29 C.F.R. § 1630.2(o) (App.). However, the guidelines go on to state: "An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." <u>Id.</u> It is clear from this second statement that the EEOC also regards reassignment as an option if the employee cannot perform his current job at all.

The majority reads this language to mean employers may *voluntarily* reassign employees who are unable to perform their jobs because of disability. The second statement says nothing about what employers may *voluntarily* do, but

---

[2] The court went on to conclude it would be unduly burdensome for the city to reassign Daugherty because the city charter gave part-time employees like Daugherty lower priority than full-time employees to vacant positions. 56 F.3d at 699-700.

rather it *limits* what employers may do; it permits an employer to reassign an employee to a *lower-graded* position only if there are no accommodations that would enable the employee to remain in his current position and there are no vacant equivalent positions for which the employee is qualified. If such vacant equivalent positions exist, the employer cannot reassign the employee to a lower-graded position but must reassign the employee to a vacant equivalent position.

Read together, and in light of the statutory language and purpose of the ADA, the guidelines' discussion of the ADA's express statutory reassignment provision shows the EEOC interprets the ADA as requiring an employer to consider reassignment when the employee cannot perform his current job at all or can only perform it with accommodation that poses undue hardship to the employer. This is the interpretation in the EEOC's own Title I Technical Assistance Manual (1992). Section I-3.10(5) provides:

> Reassignment to a Vacant Position
> In general, *the accommodation of reassignment should be considered only when an accommodation is not possible in an employee's present job, or when an accommodation in the employee's present job would cause an undue hardship*. Reassignment also may be a reasonable accommodation if both employer and employee agree that this is more appropriate than accommodation in the present job.
> . . . .
> Reassignment may be an appropriate accommodation when an employee becomes disabled, when a disability becomes more severe, or when changes or technological developments in equipment affect the job performance of an employee with a disability. *If there is no accommodation that will enable the person to perform the present job, or if*

*it would be an undue hardship for the employer to provide such accommodation, reassignment should be considered.*

. . . .

Reassignment should be made to a position equivalent to the one presently held in terms of pay and other job status, if the individual is qualified for the position and if such a position is vacant or will be vacant within a reasonable amount of time. . . .

*An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position* and there are no positions vacant or soon to be vacant for which the employee is qualified (with or without an accommodation).[3]

The interpretation in <u>Daugherty</u> and in the Technical Assistance Manual is consistent with the statutory language and legislative history of the ADA. The legislative history of the ADA indicates Congress intended reassignment to be an option whenever a disability renders an employee unable to perform his current job.

Reasonable accommodation may also include reassignment to a vacant position. *If an employee, because of his disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified* may prevent the employee from being out of work and the employer from losing a valuable worker. Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is

---

[3] <u>See also</u> the example in Section I-3.4: "If an employee whose job requires driving loses her sight, reassignment to a vacant position that does not require driving would be a reasonable accommodation, if the employee is qualified for that position with or without an accommodation." The EEOC booklet, <u>Your Responsibilities As An Employer</u> (1992), advises employers that "[w]hen an employee with a disability is unable to perform her present job even with the provision of a reasonable accommodation, you must consider reassigning the employee to an existing position that she can perform with or without a reasonable accommodation."

considered. The Committee also wishes to make clear the reassignment need only be to a vacant position--"bumping" another employee out of a position to create a vacancy is not required.

H.R. Rep. No. 485(II), at 63 (1990) (emphasis added). See also S. Rep. No. 116 at 6 (1989).

This interpretation is consistent with the structure of the ADA. There is no basis for distinguishing between an employee who cannot perform his current job at all, even with reasonable accommodation, and one who can perform his current job only with accommodation that poses undue hardship to the employer. Under the ADA, the employer is not obligated to accommodate either employee in his *current* position. However, reassignment to a vacant position is one of the many potential reasonable accommodations expressly listed in the statute.

This interpretation is also consistent with the expressed intent of Congress that the same standards should apply in determining whether the employment provisions of the Rehabilitation Act and the ADA have been violated. See 42 U.S.C. §§ 12117(b) and 12201(a). Before the 1992 amendments, the Rehabilitation Act, unlike the ADA, did not expressly provide that reasonable accommodation may include reassignment to a vacant position. The 1992 amendments incorporated the ADA standards on employment discrimination. See 29 U.S.C. §§ 791(g) and 794(d). The regulations implementing the amendments expressly provide for reassignment when an employee becomes unable to perform

the essential functions of his or her job even with reasonable accommodation. See 29 C.F.R. § 1614.203(g); see also Woodman v. Runyon, 132 F.3d 1330, 1338-39 (10th Cir. 1997).  That is the ADA standard.

In White v. York Int'l Corp., 45 F.3d 357, 361-62 (10th Cir. 1995), this court recognized reasonable accommodation under the ADA, but did not limit its applicability to situations where the employee could perform his current job only with accommodation that imposes undue hardship on the employer.  In White, the employee was unable to perform his current or former jobs at all, but the court did not reject reassignment for that reason.  Instead, the court rejected reassignment as a reasonable accommodation because the employer established there were no vacant equivalent positions the employee could perform.  See also Milton v. Scrivner, Inc., 53 F.3d 1118, 1124-25 (10th Cir. 1995) (plaintiffs unable to perform essential functions of current jobs failed to establish transfer to other positions was reasonable accommodation because they failed to show equivalent jobs were vacant and because they were not entitled to transfer under collective bargaining agreement).

As in White, we should look first to whether Smith can perform the essential functions of the job he held when he became disabled, with or without reasonable accommodation.  If he cannot, we should then look to possible

reassignment to another position and whether he could perform the essential functions of that position with or without reasonable accommodation.

Moreover, as argued by Smith, some of the authority relied on by the majority is suspect. In <u>Myers v. Hose</u>, 50 F.3d 278, 284 (4th Cir. 1995), an ADA case, the court stated: "This circuit has made it clear . . . that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." The <u>Myers</u> court cited <u>Guillot v. Garrett</u>, 970 F.2d 1320, 1326 (4th Cir. 1992), a Rehabilitation Act case which held reasonable accommodation under the pre-1992 version of the Act did not include reassignment to a vacant position. In <u>Myers</u>, the court appeared simply to follow <u>Guillot</u> without considering the statutory language of the ADA and its differences with the language of the pre-1992 Act. <u>See</u> <u>Gile v. United Airlines, Inc.</u>, 95 F.3d 492, 498 (7th Cir. 1996). However, in <u>Williams v. Channel Master Satellite Systems, Inc.</u>, 101 F.3d 346, 350 n.4 (4th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1844 (1997), the court explained <u>Myers</u> did not hold that reassignment to a vacant position can never be a reasonable accommodation under the ADA, noting such a conclusion would be contrary to congressional direction. To the extent <u>Myers</u> stands for the proposition that reassignment cannot be a reasonable accommodation under the ADA, it should not be followed in this circuit.

-9-

In Foreman v. Babcock & Wilcox Co., 117 F.3d 800 (5th Cir. 1997), the court concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him. The court concluded reassignment of a worker who could not perform his old job was not a reasonable accommodation because it would violate other workers' rights under a collective bargaining agreement and because the worker failed to show any of the requested positions were vacant or that he was otherwise qualified for them. 117 F.3d at 810.

We have found no other court that has recognized reassignment as a reasonable accommodation and then adopted the limitation on reassignment adopted by the majority. See, e.g., Gile, 95 F.3d 492; Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114-15 (8th Cir. 1995); Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1103 (S.D. Ga. 1995); see also, Aka v. Washington Hospital Center, 116 F.3d 876, 890, vacated and rehearing en banc granted 124 F.3d 1302 (D.C. Cir. 1997).

Contrary to the majority's suggestion, requiring employers to accommodate disabled employees by reassignment to vacant positions does not constitute affirmative action beyond the congressional intent of the ADA. The majority relies on Southeastern Community College v. Davis, 442 U.S. 397 (1979), where

-10-

the Court held the Rehabilitation Act does not require employers to take affirmative action in favor of disabled employees that would fundamentally alter employers' programs. However, in <u>Alexander v. Choate</u>, 469 U.S. 287, 300 n.20 (1985), the Court distinguished between affirmative action that would require fundamental changes in a recipient's program and an employer's affirmative obligation under the Act to provide changes that would be reasonable accommodations. In <u>School Board of Nassau County v. Arline</u>, 480 U.S. 273, 289 n.19 (1987), another Rehabilitation Act case, the Court explained: "Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee." Under the Act in effect at that time, employers were "not required to find another job for an employee who is not qualified for the job he or she was doing," but could not "deny an employee alternative employment opportunities reasonably available under the employer's existing policies." <u>Id.</u>

This case arises under the ADA, not the pre-1992 Rehabilitation Act. The ADA expressly prohibits discrimination against a qualified employee with a disability and defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations" of the employee unless the employer can demonstrate the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). Unlike the pre-1992 Rehabilitation Act, the ADA expressly provides reasonable accommodation includes reassignment to

a vacant position. Under the express terms of the ADA, failure to offer an employee whose disability renders him unable to perform his current job reassignment to a vacant position he is qualified to perform is prohibited discrimination. Holding an employer liable for that failure is not affirmative action beyond what Congress intended, but merely enforcement of the express statutory prohibition against discrimination by failure to make reasonable accommodation.

Requiring employers to reassign disabled employees who can no longer perform their old jobs to vacant positions they can perform is not preferential treatment beyond the congressional intent of the ADA. In Daugherty, the city manager testified that reassigning plaintiff, who was a part-time worker, to a full-time position for which a full-time worker had priority under the city charter would likely have led to a lawsuit by the full-time employee. The court's statement that the ADA does not require that disabled persons be given priority in reassignment over those who are not disabled must be read in this context. Daugherty holds there is no duty to accommodate disabled employees by reassigning them to positions to which other employees have a prior claim. Under those circumstances, reassignment would allow a disabled employee to "bump" a worker with a prior claim to the position, which is contrary to the intent of

Congress. Daugherty is inapplicable where no other employee has a prior claim to a position to which a disabled employee seeks reassignment.

Here, there is no city charter giving other employees priority to positions and there is no evidence of a collective bargaining agreement. Reassigning Smith to a vacant position would not give him priority over any other employee who is not disabled.

I agree with the majority that Smith is not estopped from bringing his ADA claim. However, because the employer had the duty to provide reasonable accommodation by reassigning Smith to a vacant position for which he was qualified, it is necessary to decide the effect of Smith's statements in support of his social security disability claim. Here, Smith's representation that he was "totally disabled and unable to work" does not by itself justify summary judgment for the employer on the ground that Smith was not qualified for any of the vacant positions he identified.

Total disability within the meaning of the Social Security Act is not inconsistent with being qualified under the ADA for a job with one employer that could be specifically tailored for the employee through reasonable accommodation. A person is disabled when he is not qualified for jobs that exist in significant numbers in the national economy. 42 U.S.C. § 423(d). Reasonable accommodation is not taken into account in determining social security disability.

-13-

Moreover, the Act permits persons to receive disability benefits while engaged in a period of trial work of up to nine months. 42 U.S.C. § 422(c). Smith's statement that he was "totally disabled and unable to work" is relevant evidence of inability to work, but is not so conclusive as to justify summary judgment when there is evidence he was able to perform particular positions with the employer. See Talavera v. School Board, 129 F.3d 1214, 1217-20 (11th Cir. 1997); Swanks v. Washington Metropolitan Area Transit Auth., 116 F.3d 582, 586-88 (D.C. Cir. 1997).

Because reasonable accommodation includes reassignment to a vacant position when an employee like Smith cannot perform his current job at all, and because Smith's statement in support of his social security claim does not by itself justify summary judgment, resolution of this case requires examination of the record to determine whether he presented evidence that he could perform any of the identified vacant positions. Smith failed to present evidence that he was physically able or otherwise qualified for many of the positions that became vacant between the time his dermatitis flared up in 1992 and his termination in March 1993. However, there was evidence he was physically able and otherwise qualified for at least two of the positions, a position in "Flexisticks," and a kit assembly position, both of which became vacant in July 1992.

According to Jon Anderson, a registered nurse and Midland's health and safety coordinator, Smith could have performed the essential functions of these two positions with some accommodation. Anderson testified in his deposition that he did not offer these positions to Smith because Smith's physician, Dr. Singer, rated Smith "unable to work" and had not released him to return to work. Anderson thought it would be futile to offer the positions to Smith in July because in June, Dr. Singer had not released him to work in light assembly and Smith had unsuccessfully tried to work in shipping. Although Dr. Singer had rated Smith "unable to work" on his reports to Midland, there was evidence that Anderson and Dr. Singer interpreted the rating to mean Smith was unable to work at his old job and Dr. Singer was unaware of any other jobs Smith could perform with Midland. An "unable to work" rating did not in this case rule out other work. Ordinarily, when a disabled employee's doctor labeled an employee "unable to work," Anderson would contact the doctor if a position became available that Anderson thought the employee could perform. Whether Smith was qualified for or could perform the positions that became vacant in July was a question of material fact.

Midland points out the ADA did not take effect until July 26, 1992, and argues any statutory obligation it has to consider reassignment extends only to positions vacant after that date. See Smith v. United Parcel Service of America, Inc., 65 F.3d 266 (2d Cir. 1995); O'Bryant v. City of Midland, 9 F.3d 421 (5th

-15-

Cir. 1993). The Flexisticks and kit assembly positions became vacant in July and there is evidence that at least one of the positions remained vacant after the effective date of the ADA. Failure to consider reassignment to a position that remained vacant after the effective date could be a violation of the ADA.

Midland also argues any obligation it has to consider reassignment extends only to positions that become vacant very shortly after an employee becomes disabled. The EEOC's interpretative guidelines state reassignment should be considered only if "the position is vacant within a reasonable amount of time." The guidelines go on to state a reasonable amount of time should be determined "in light of the totality of the circumstances," and give as an example a position that becomes vacant a week after a disabled employee requested reassignment. 29 C.F.R. § 1630.2(o) (App.). Here, the two positions in question became vacant approximately two months after Smith became unable to perform his old job. While this is considerably longer than the one-week example, it is not necessarily an unreasonably long time in light of the totality of the circumstances. According to Cathy Lynch, Midland's human resources director, it was not uncommon for employees like Smith, who were on workers' compensation leave, to return to work after a year, and it was company policy to look for vacant positions that injured employees could perform. The company did in fact continue to look for alternative positions for Smith long after May 1992. An issue of material fact

remains as to whether it is reasonable to require Midland to consider reassigning Smith to either of the two positions that became vacant in July.

I would reverse the summary judgment in favor of Midland on Smith's ADA claim. I am in agreement with the balance of the majority's opinion.