**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SAMUEL CRANO,

      Plaintiff-Appellant,

v.

GRAPHIC PACKAGING
CORPORATION,

      Defendant-Appellee.

No. 02-1166
(D.C. No. 00-D-877)
(D. Colo.)

---

**ORDER AND JUDGMENT**

---

Before **TACHA** , Chief Judge, **HARTZ** , and **O'BRIEN** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Samuel Crano brought suit against his former employer, defendant Graphic Packaging Corporation (GPC), alleging disparate treatment and disparate impact under the Americans with Disabilities Act (ADA), and willful breach of contract and promissory estoppel under state law. The district court granted summary judgment for GPC on the ADA claims and dismissed the state law claims without prejudice. Crano appeals only the disposition of the disparate treatment claim. On de novo review, *see Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 966 (10 th Cir. 2002), we affirm.

**I**

Crano worked as a packer inspector at GPC for over ten years. In July 1996 he went on indefinite medical leave for treatment of liver disease, which led to an organ transplant in December 1997. GPC did not hire a replacement for Crano. Rather, while Crano was on leave, GPC decided to eliminate the packer inspector position generally and began phasing it out by attrition as the few other packer inspectors retired or took different jobs. Although the latter were thus "grandfathered" in the position, Crano was not entitled to that protection because under GPC's continuous-service and leave policies his employment status with the company ended when his absence from work extended beyond a year.

In late April 1998 Crano was cleared for work, but his post-surgical condition, complicated by persistence of the infection necessitating the transplant, led his physicians to recommend a four-hour work day (to be lengthened if and as his endurance increased) and a restriction on lifting over twenty to thirty pounds. *See* App. II at 290; App. I at 145; *see also* App. I at 146 (same restrictions noted two years later); *id.* at 147-52 (same, with additional limitations). The requirements of the job of packer inspector exceeded these limits. *See* App. I at 127-29 (written job description); *id.* at 181 (explanation of job demands by GPC vice president of human resources); *see also id.* at 149 (letter from physician noting that limitations leave Crano "unable to do manual labor, exertional work (his old job)"). When Crano sought to return to GPC in the spring and early summer of 1998, the formal accommodation requests he made through counsel sought his reinstatement as a packer inspector, with a shortened shift of four hours gradually increasing, if possible, to a standard workday. *See* App. II at 291-96 (letters of May 29, July 7, July 17, and July 29, 1998). He did, however, later ask for accommodation through reassignment to any other positions for which he was qualified.

GPC responded that the packer inspector position had been eliminated and that under the company's continuous-service and leave policies, Crano was no longer a current employee. *See* App. I at 41-42 (July 9, 1998 letter from GPC's

counsel). Crano was told that he could "apply for any available positions at [GPC] on the same basis as any other non-employee applicant[, but] there are not and will not be any available positions as packer inspector." *Id.* at 41.

Crano filed this suit claiming that the policies invoked in his case had a disparate impact on disabled employees and that GPC unreasonably failed to accommodate his disability, both in violation of the ADA. He also asserted that representations made to him with regard to his extended leave and subsequent attempt to return to work gave rise to state law claims for breach of contract and promissory estoppel. As noted, only the ADA accommodation claim is at issue on this appeal. This claim required Crano to show that "(1) [he] is a disabled person as defined by the ADA; (2) [he] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against [him] because of [his] disability." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10 th Cir. 2000).

GPC defended on multiple legal grounds, several of which the district court accepted in granting its motion for summary judgment. In particular, the district court held that Crano was not able to perform the packer inspector job, even with reasonable accommodation (which would not require creation of a new, part-time version of the job), and that, in any event, the position had been eliminated by the time he asked to return to work. As for Crano's request for accommodation

through reassignment to another job, the court noted three impediments, including his loss of current-employment status under GPC's continuous-service and leave policies, his failure to initiate the interactive accommodation process regarding reassignment in a timely manner, and the inconsistency between his request for accommodation and his allegations in unrelated disability proceedings that he was unfit to engage in any substantial gainful activity.

## II

We need not consider all the alternative rationales in the district court's analysis and Crano's corresponding arguments on appeal. It will suffice for our disposition of this appeal to hold that (1) GPC had no duty to reinstate Crano as a packer inspector after the position had been eliminated while he was on indefinite leave, and (2) after Crano's status as a current employee expired, GPC was not required to reassign him to some other job within the company.

With respect to the reinstatement claim, Crano insists that a factual dispute regarding the elimination of his position precluded summary judgment. He does not contend that there is any evidence to undercut GPC's showing that the packer inspector position was being phased out generally through attrition and that his job was not filled when he went on indefinite leave. Rather, Crano's argument is that he should have been grandfathered in the position, as were those working as packer inspectors when GPC decided to eliminate the position. In that event, he

argues, his job should have been available for purposes of ADA accommodation when he sought to return to work.

The flaw in this argument is that Crano did not remain a packer inspector during his extended leave. On the contrary, under company policies he lost the status and attendant prerogatives of a current employee long before he obtained a limited work clearance and asked GPC to provide him a part-time version of his old, now-nonexistent job. As the district court noted, the ADA does not require the *creation* of jobs or vacancies to accommodate a disabled worker. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174-75 (10th Cir. 1999) (en banc). Moreover, Crano cannot premise his ADA claim on GPC's failure to make an exception to its leave policies as a form of accommodation to his condition–this court and others have repeatedly held that maintaining an employee on indefinite leave while reserving a job opening for his possible return is not a reasonable obligation to be imposed on employers under the ADA. *See Boykin v. ATC/VanCom of Colo., L.P.,* 247 F.3d 1061, 1064-65 (10th Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000); *Watkins v. J & S Oil Co.*, 164 F.3d 55, 61-62 (1st Cir. 1998).

Crano's loss of current-employment status under GPC's continuous-service and leave policies is also fatal to his claim for accommodation by reassignment. This court took pains in *Midland Brake* to clarify a critical distinction between an

employer's particularized, affirmative duty to accommodate a disabled employee by reassignment to a vacant position and an employer's broader, neutral duty simply to consider job applicants without discrimination based on disability. *See Midland Brake*, 180 F.3d at 1164-70. The ADA secures the latter guarantee for the workforce at large, *see id.* at 1164 (citing 42 U.S.C. § 12112(a)), whereas the former is "one of the forms of reasonable accommodation specifically mentioned by the [ADA] to be utilized if necessary and reasonable to keep an existing disabled employee employed by the company," *id.* at 1165. To qualify for job reassignment–which bypasses the normal hiring process–"the person must therefore be an existing employee." *Id.* at 1164. We agree with the district court that Crano's request for reassignment presupposed the employment status he had lost while on extended leave. Thus, when GPC denied his request but told him that he could "apply for any available positions at [GPC] on the same basis as any other non-employee applicant," with the assurance that GPC "ha[d] no intention of discriminating against him in any way," App. I at 41-42, GPC complied with the pertinent legal obligations imposed by the ADA.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge